Alvin L. LEVINE, Leah Levine, Roy A. Campbell, Martha M. Campbell, Rudy J. Cerone, and Lori L. Cerone, Plaintiffs,

v.

ARABIAN AMERICAN OIL COMPANY, Defendant.

No. 84 Civ. 2396 (RLC).

United States District Court, S.D. New York.

March 30, 1987.

Jack Halpin, New York City, John F. Wells, Lise A. Pearlman, Stark, Stewart, Wells & Robinson, Oakland, Cal., for plaintiffs.

White & Case, New York City, (Rayner M. Hamilton, Monica H. Mullin, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

In what has become an increasingly familiar pattern, after extensive discovery, numerous pre-trial motions, five days of

trial ending in a directed verdict, and an unsuccessful appeal, this case is back before the court on defendant's motion for sanctions. What is unusual, however, is that defendant Arabian American Oil Company ("Aramco") seeks to sanction plaintiffs' counsel[1] for filing claims whose merit was never formally addressed by this court, for claims filed in the Court of Appeals, and for plaintiffs' counsel's conduct, rather than its submissions, in this and other tribunals.

## BACKGROUND

This case is based on a complicated factual predicate, which the court has set out on more than one occasion. *See Levine v. Arabian American Oil Co.*, No. 84 Civ. 2396 (S.D.N.Y. Nov. 27, 1985) (Carter, J.) [Available on WESTLAW, DCT database] (partial summary judgment) ("*Levine*"), *aff'd*, 800 F.2d 1128 (2d Cir.1986); Trial Transcript ("Tr.") at 747, *Levine v. Arab American Oil Co.*, (S.D.N.Y. Dec. 13, 1985) (Carter, J.) (directed verdict); *Levine v. Arab American Oil Co.*, (S.D.N.Y. Nov. 16, 1984) (transfer) [Available on WESTLAW, DCT database]. Familiarity with earlier opinions is, of course, assumed, although some recapitulation of the facts is necessary to view the instant motion in its proper light.

Plaintiffs Alvin and Leah Levine, Roy and Martha Campbell, and Rudy Cerone are former Aramco employees who were either terminated or forced to resign from jobs they held at the Aramco compound in Dhahran, Saudi Arabia. The Levines were terminated after Alvin Levine was sentenced by a Saudi Arab judge to 12 months imprisonment and deportation for operating a commercial video club out of his home without a license, and for possessing pornographic tapes. Rudy Cerone was terminated and the Campbells chose to resign (their only other option was to be terminated) after Mr. Cerone and Mr. Campbell signed statements admitting to having consumed alcohol, following an altercation they had with several Aramco guards when they attempted to re-enter the Dhahran compound after a beach party. The consumption of alcohol is a crime under Saudi Arab law.

On April 4, 1984, the aforementioned plaintiffs and Lori Cerone, who is the Levine's daughter as well as Rudy Cerone's wife, brought suit. The Campbells and the Cerones alleged that Aramco had used the guard incident as a pretext to retaliate against them for helping a *New York Times* reporter make contact with the imprisoned Levine. They asserted claims for wrongful termination, defamation, fraud, intentional infliction of emotional distress, false imprisonment and assault and battery. The Levines asserted claims based on the same legal theories, as well as a claim sounding in strict liability.

In July, 1985, Lori Cerone stipulated to drop her claim with prejudice. On November 27, 1985, on defendant's motion for partial summary judgment, the court held that Saudi Arab law, which governed the Cerone-Campbell tort claims, required that the claims be dismissed, but that trial was necessary to determine whether steps that Aramco had allegedly taken to encourage and facilitate alcohol consumption among its Dhahran employees estopped it from terminating the plaintiffs. Before trial the court determined that the Levine claims sounding in tort were also governed by Saudi Arab law, Tr. at 745, leaving only the wrongful termination claims to be adjudicated at trial. At the conclusion of the trial, the court directed a verdict in favor of Aramco. Tr. at 753–54. On April 18, 1986, the court's opinion was affirmed in all respects. *Levine v. Arabian American Oil Co.*, 800 F.2d 1128 (2d Cir.1986).

On July 30, 1986, defendant filed the instant motion. Defendant alleges that the claims interposed on behalf of Lori Cerone, the Cerone-Campbell tort claims, the Levine tort claims, and the wrongful termination claims all violated Rule 11, F.R. Civ.P. In addition, defendant contends

---

1. Although Aramco's motion seeks to sanction either plaintiffs or their attorneys, the parties appear to agree that if Rule 11 was violated, plaintiffs' counsel, rather than the individual plaintiffs, are responsible. Memorandum in Opposition at 1 n. 1; Reply Memorandum *in passim*.

that certain submissions and actions of plaintiffs' counsel on appeal warrant sanctions.[2] Finally, defendant seeks sanctions not for any particular filing, but for a "pattern and practice" of abuse which includes the alleged violations recounted above as well as certain additional filings and allegedly improper conduct. Memorandum at 2.[3] For their part, plaintiffs' counsel, although they have not submitted a formal motion, contend that defendant's motion for sanctions itself violates Rule 11. Memorandum in Opposition at 8, 26.[4]

DISCUSSION

The principal purpose of Rule 11,[5] F.R. Civ.P., is to deter spurious litigation. Rule 11, F.R.Civ.P. advisory committee note. This is accomplished by holding every "pleading, motion, or other paper" filed in federal court to an objective standard of reasonableness. As the Second Circuit warned in its seminal opinion in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), "subjective good faith no longer provides the safe harbor it once did." *Id.* at 253.

The drafters of the rule and the courts that have implemented it, however, have expressed two principal reservations as to its reach and effect. They have cautioned against allowing "satellite litigation" over sanctions to undermine the efficiency the rule is intended to promote, *see Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), and they have warned that the rule should not "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway, supra*, 762 F.2d at 254. With these reservations in mind, the court may proceed to assess the specific violations complained of on this motion.

■ Aramco submitted its motion prior to the Second Circuit's decision in *Oliveri*. That decision makes short shrift of what is perhaps defendant's most basic contention—that plaintiffs' counsel is subject to sanctions under Rule 11 for engaging in a "pattern and practice" of abuses throughout the lawsuit. *See* Memorandum at 2; Reply Memorandum at 28–29. In *Oliveri*, the court held that "[w]hile the drafters of the rule could easily have further extended its application by referring to the entire conduct of the proceedings, they failed to do so." 803 F.2d at 1274; *see also In re Yagman*, 796 F.2d 1165, 1187 (9th Cir.1986) (same). Under *Oliveri*, Aramco may not complain of the cumulative effect of plaintiffs' counsel's conduct, but only of specific pleadings, motions or other papers which

**2.** Specifically, defendant complains of plaintiffs' appeal to the Second Circuit, the "Form C" they filed in that court, their handling of the joint appendix on appeal, their alleged conglomeration of the trial record with the summary judgment record in the appellate court, their filing of a Petition for Rehearing, their characterization of the record in that filing, and their advancement of allegedly spurious claims on appeal. Reply Memorandum at 28–29.

**3.** It also alleges that plaintiffs' motion with respect to venue, and their questioning of Aramco employeees concerning their personal habits with respect to alcohol consumption violated Rule 11. Reply Memorandum at 28–29.

**4.** Plaintiffs also argue that defendant's motion is untimely because it was not filed within ten days of the entry of judgment. Memorandum in Opposition at 3. The ten day limit, however, does not apply to a motion made under Rule 11. *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F.Supp. 657 (S.D.N.Y.1984) (Weinfeld, J.),

*aff'd*, 757 F.2d 465 (2d Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).

**5.** Rule 11 provides in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Rule 11, F.R.Civ.P. It should be noted that defendant also moves for sanctions under the equitable powers of this court. This motion must be denied, however, because it has failed to demonstrate the requisite subjective bad faith. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975).

fall short of the standards established by the rule. *Oliveri, supra,* 803 F.2d at 1274.

■ Aramco's contention that plaintiffs' counsel's conduct and submissions on appeal violated Rule 11 can also be readily disposed of. These matters are not properly the concern of this court. The Second Circuit has explicitly held that "the determination of whether or not to impose [attorneys' fees for a frivolous appeal] is reserved to the discretion of this Court." *Sierra Club v. United States Army Corps of Engineers,* 776 F.2d 383, 392 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986) (quoting *Argo Marine Systems, Inc. v. Camar Corp.,* 755 F.2d 1006, 1015 (2d Cir.1985)). The origins of this rule are not difficult to discern. First, as a general matter, the appellate court is in a better position to assess the submissions filed with it. *Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 576 (E.D.N.Y.1986) (opinion on remand) ("*Eastway II*"). Indeed, for the district court to review those submissions, which it would not otherwise have occasion to do, would surely run afoul of the aforementioned rule against time-consuming satellite litigation. *See Oliveri, supra,* 803 F.2d at 1280. More important, however, "a rule permitting a district court to sanction an attorney for appealing an adverse ruling might deter even a courageous lawyer from seeking the reversal of a district

court decision." *Cheng v. GAF Corp.,* 713 F.2d 886, 892 (2d Cir.1983), *vacated and remanded on other grounds,* 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985). As a result, absent specific instructions from the appellate court, this court is without authority to impose sanctions for papers filed on appeal. *Eastway II, supra,* 637 F.Supp. at 576.[6]

Aramco's assertion that particular submissions to this court warrant sanctions comes within the purview of Rule 11, F.R. Civ.P. Aramco argues that plaintiffs' tort claims fall short of Rule 11 standards not only under Saudi Arab law, which the court applied in dismissing those claims, but also under New York or Texas law, which plaintiffs had urged the court to apply in their papers in opposition to partial summary judgment.[7] Plaintiffs' counsel concede that their claims were without merit under Saudi Arab law, *see Levine, supra,* at 16, but they say the choice of law issue was an extremely difficult one and that their claims had merit under American law. As a result, they argue, sanctions would be inappropriate.

■ Plaintiffs' counsel are correct that the choice of law issue was an especially complicated one. Indeed, even Aramco admits as much. *See* Memorandum at 14. More important to the instant motion is the fact that it was an extremely hard-fought

---

**6.** Aramco argues that the "chilling effect" of such a sanction "is not present when the sanction is imposed not for appealing, but for misrepresenting the record in the appellate court or for otherwise making submissions which do not meet the standards of Rule 11." Memorandum at 9–10. Putting aside the fact that Aramco does indeed seek to sanction plaintiffs' counsel for appealing, *see* Reply Memorandum at 28, the court fails to see any merit, as a practical matter, in the distinction Aramco attempts to draw. In either case, the problem of chilling vigorous appeals remains.

**7.** In support of this position, Aramco points to dicta in its opinion granting partial summary judgment on the tort claims that even under American law some of plaintiffs' claims for assault and battery were "unlikely to prevail," *Levine, supra,* at 20 n. 9, that plaintiffs' claims for false imprisonment were "weak," *id.* at 21 n. 10, and that even under Texas law (which plaintiffs alleged was applicable) it was

fairly clear that they had no claim for fraud. *Id.* at 23 n. 11.

It should be noted that the court did not comment that all of plaintiffs' tort claims appeared weak under American law. Indeed, with respect to two such claims—the assault claims filed by Rudy Cerone and Martha Campbell—the court specifically stated that they might very well have *prevailed* under American law. *Levine, supra,* at 20.

In any case, it is surely a mistake to rely too heavily on any court's language in support of a motion for sanctions. As Chief Judge Weinstein has written:

Judicial opinion-writing style is well-known; after the judge equivocates in chambers and cogitates, with the decision hanging in the balance, the opinion is written in an adversarial fashion as if the court never had been dubitante and the outcome was always inevitable.

*Eastway II, supra,* 637 F.Supp. at 569.

issue. Aramco alone devoted much of the 61 pages of legal argument to the choice of law question. It is ironic, to say the least, that Aramco now turns around and argues, in effect, that the choice of law issue was irrelevant because under either American or Saudi Arab law plaintiffs' claims were so lacking in merit as to warrant sanctions.

In any case, the court is extremely reluctant to sanction attorneys for bringing claims the merit of which the court has never formally addressed. Here, because the tort claims were governed by Saudi Arab law, the court had no occasion to consider their merit under American law. *Eastway* commands that sanctions are only warranted where "no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway, supra,* 762 F.2d at 254. On the basis of the present record, the court is unable to say with confidence that no such arguments could be presented.[8] Before sanctions would be appropriate, plaintiffs' counsel would have to be given the opportunity to convince the court that their tort claims stood some chance of success under American law. Yet, to order such an undertaking at this stage would certainly generate unduly time-consuming satellite litigation, *see, e.g., Oliveri, supra,* 803 F.2d at 1280, and violate the advisory committee's admonition that "[t]o assure that the efficiency achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, *the court must to the extent possible limit the scope of sanctions proceedings to the record."* Rule 11, F.R.Civ.P. advisory committee note (emphasis added).

Aramco's argument that the tort claims asserted by Lori Cerone violated Rule 11 raises several additional considerations. Unlike the other plaintiffs, Lori Cerone

agreed to withdraw her claims without prejudice six months after the complaint was filed, and stipulated to their dismissal with prejudice eight months later—before the court's decision on defendant's motion for partial summary judgment, and a full five months before trial. Thus, not only was the court spared the effort of assessing the merits of her claims, but defendant was spared much of the expense of convincing the court that dismissal was necessary.

Although a party or counsel is subject to sanctions for filing a spurious complaint, it is important to distinguish claims that are dropped after the pleading stage from those that a plaintiff continues to press even after it has become clear that they stand no chance of success. *See, e.g., Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.,* 112 F.R.D. 664 (S.D.N.Y. 1986) (Carter, J.) (refusal to drop spurious claims warrants sanctions); *Steinberg v. St. Regis/Sheraton Hotel,* 583 F.Supp. 421, 425 (S.D.N.Y.1984) (Goettel, J.) (same).

This distinction is especially important in light of the Second Circuit's decision in *Oliveri.* In that case the court declined to sanction plaintiff's counsel for asserting civil rights claims dependent on membership in a protected class on behalf of a nonmember plaintiff. The court held that although the claims were without merit, they were *so* spurious that it was unlikely that it required much effort or expense to gain their dismissal. Although asserting the claims may have been a "technical violation" of the rule, the court held that any harm that resulted was *"de minimus."* 803 F.2d at 1280. So here, to the extent that Lori Cerone's claims were technically in violation of the rule, the court is convinced that any expense they caused—or should have caused—Aramco was so slight as not to warrant pecuniary recompense.

---

**8.** It is conceivable that counsel could advance a claim so flagrantly spurious that a determination on the appropriateness of sanctions could be made by the court with minimal cost to judicial efficency even if those claims had never been formally addressed by the court. This, however, is not that case. From the outset this case has been remarkable for its complexity. *See, e.g., Levine, supra,* at 1; Reply Memorandum at 23 (Aramco did not even move for summary judgment on the Levine claims when it did so with respect to the remaining plaintiffs because of the "complex factual situation"); *cf. Sun Refining & Marketing Co. v. D'Arpino,* 112 F.R.D. 668 (S.D.N.Y.1986) (Carter, J.) (sanctions warranted for obviously frivolous removal petition in a simple case).

Aramco also asserts that plaintiffs' counsel violated Rule 11 by creating a material issue of fact on the estoppel issue at the summary judgment stage by referring to evidence which they should have known would not be admissible at trial. Aramco argues that plaintiffs' counsel created a factual dispute in its papers in opposition to partial summary judgment by referring to inadmissible books and manuals about Saudi Arabia, and to pamphlets allegedly distributed by Aramco to its Dhahran employees on how to make alcohol from a still, which plaintiffs' counsel knew their clients had not relied on.

■ While there is no question but that plaintiffs' evidence at trial was weak—the directed verdict itself makes that very clear—Aramco overemphasizes the importance of the books' and pamphlets' presence at the summary judgment stage and their absence at trial. If the issue had been so simple, or if plaintiffs' case rested on such a small set of inadmissible documents, the court would not have waited through five days of trial before directing a verdict. In fact, plaintiffs' counsel did introduce evidence supporting its estoppel argument, most notably testimony that many of the houses in Dhahran, including the one rented by the Campbells, included a room designed to be used as a still. Indeed, in reaching its directed verdict, the court balanced the environment which Aramco had created to facilitate liquor consumption against the company's explicit warnings that it would exercise its right to terminate an employee for liquor consumption. Tr. at 745. While the balance tipped in favor of the directed verdict, Aramco goes too far when it contends that plaintiffs' counsel had no support for its argument.

CONCLUSION

For the reasons expressed above, defendant's motion is denied.

IT IS SO ORDERED.