John J. CURLEY, James Karanfilian and Duane Roberts, individually and on behalf of Brignoli Curley & Roberts, Associates, a Delaware limited partnership, Plaintiffs,

v.

BRIGNOLI CURLEY & ROBERTS, ASSOCIATES, a limited partnership, Brignoli & Curley Inc. and Richard Brignoli, Defendants.

BRIGNOLI CURLEY & ROBERTS, ASSOCIATES, a limited partnership, Brignoli & Curley, Inc., and Brignoli Models, Inc., Defendants and Additional Counterclaim Plaintiffs,

v.

Richard BENNETT, Brick Securities Associates, and Brick Securities Partners, L.P., Additional Defendants on the Counterclaims.

No. 88 Civ. 5307 (MP).

United States District Court, S.D. New York.

Dec. 27, 1989.

Steven G. Storch, Munves, Tanenhaus & Storch, New York City, for defendants and additional counterclaim plaintiffs Richard Brignoli and Brignoli Models, Inc.

John F. Triggs, Jacobson & Triggs, New York City, for additional defendants on the counterclaims Richard Bennett, Brick Securities Associates and Brick Securities Partners, L.P.; John F. Triggs and Kristine M. Reddington, of counsel.

Raymond J. Soffientini, Battle Fowler, New York City, Attorneys, Receiver and Liquidating Trustee for Brignoli, Curley & Roberts, Associates.

Martin E. Karlinsky, Scheffler Karlinsky & Stein, New York City, pro se.

Robert B. Breisblatt, Welsh & Katz, Ltd., Chicago, Ill., pro se.

Arie E. David, Arie E. David Law Firm, New York City, pro se.

MILTON POLLACK, Senior District Judge.

Additional defendants on the counterclaims move for sanctions under Fed.R. Civ.P. 11 against the counterclaim plaintiffs, their lawyers and, in some instances, against those lawyers' law firms. The defendants on this motion, in turn, have applied under Rule 11 for attorneys' fees to cover the costs of litigating this motion. For the reasons set out below, both the motion for sanctions and the cross-applications for attorneys' fees are denied.

## Background

The complicated proceedings in this action began in July 1988, when plaintiffs John Curley, James Karanfilian and Duane Roberts, limited partners of Brignoli, Curley & Roberts, Associates ("BCR"), sued BCR, its general partner Brignoli & Curley, Inc. ("BCI"), and BCI's majority shareholder and chief executive officer, Richard Brignoli ("Brignoli"), seeking equitable remedies, including the possible dissolution of the BCR partnership.

BCR, BCI and Brignoli Models, Inc. ("BMI"), which is an investment advisor corporation controlled by Brignoli and which had entered into a licensing agreement with BCR in regard to investment analysis software owned by BMI, filed counterclaims against plaintiffs and against additional defendants Richard Bennett, Brick Securities Associates and Brick Securities Partners, L.P. (collectively "Brick and Bennett"). The counterclaims alleged, on behalf of BCR: 1) breach of the licensing agreement by Brick; 2) breach of fiduciary duty by Brick and Bennett; and 3) negligence by Bennett. A fourth claim

alleged, on behalf of BMI, intentional interference with the licensing agreement by the counterclaim defendants. The gravamen of the counterclaims was that Brick and Bennett breached their contract with BCR and their fiduciary duty to BCR by engaging in cross-trades, in which they represented both sides of a securities transaction and received commissions from both, and by not completing trades as dictated by the Stock Sleuth program which was the subject of the licensing agreement.

The law firm of Scheffler, Karlinsky & Stein ("Scheffler law firm") was originally retained by Brignoli on behalf of BCR, BMI and BCI in September, 1988. Martin Karlinsky signed the answer containing the counterclaims. The Scheffler law firm was discharged on February 8, 1989, and on March 20, 1989, Arie David of the Arie E. David law firm ("David law firm") became attorney of record, although it appears that the David had been counseling Brignoli as to the proceedings prior to that time.

Brignoli retained Robert Breisblatt of the Welsh & Katz law firm as trial counsel on March 29, 1989. Breisblatt signed the pretrial order on May 31, 1989, under the name of the David law firm.

The case was bifurcated into jury and non-jury issues. Following the non-jury trial in June and July 1989, the partnership was dissolved and the law firm of Battle Fowler was designated by the Court as the liquidating trustee and receiver.

The counterclaims proceeded to a jury trial in June 1989. By the time of trial, BMI had dropped its claim for intentional interference with the licensing agreement. Therefore, only the claims brought on behalf of BCR remained. At trial, Triggs moved for a directed verdict after the counterclaim plaintiffs rested. The motion was denied. Triggs moved again for directed verdict after the close of all evidence. Again the motion was denied. However, the Court did note that it had "no doubt that any finding favorable to the so-called plaintiffs in this matter [on the issues of breach of contract and damages] by a jury would have to be set aside as unjustified and irrational." (Tr. 758).

The jury returned a verdict in favor of the counterclaim defendants on June 12, 1989. On July 13, 1989, counterclaim plaintiffs filed a notice of appeal signed by David, and, on August 4, 1989, David signed a motion to vacate and set aside the jury verdict and to either direct a verdict for the counterclaim plaintiffs, dismiss the action as lacking diversity or grant a new trial. By an August 15, 1989 Decision and Order, the Court denied the motion in all respects. On October 27, 1989, the Second Circuit dismissed the appeal for failure to perfect.

Having waited for the outcome of the appeal, Brick and Bennett made the present Rule 11 motion on October 27, 1989.

### Discussion

#### a. Purpose and Scope of Rule 11

In relevant part, Rule 11, as amended in 1983, provides that:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name ... The signature of an attorney constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after *reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction ...

(emphasis added).

Rule 11 is not a fee-shifting device and was not intended to abrogate the so-called American Rule: "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attor-

neys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Rather, Rule 11 "was intended to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1469 (2d Cir.1989) (quoting Advisory Committee's Note to 1983 Amendment to Fed.R.Civ.P. 11), *rev'd on other grounds sub nom. Pavelic & Leflore v. Marvel Entertainment Group, et al.,* — U.S. —, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

■ In analyzing the scope of Rule 11's coverage, as with the other Federal Rules of Civil procedure, the courts look to "their plain meaning," *Walker v. Armco Steel Co.,* 446 U.S. 740, 750 n. 9, 100 S.Ct. 1978, 1985 n. 9, 64 L.Ed.2d 659 (1980), and "as with a statute, '[w]hen we find the terms ... unambiguous, judicial inquiry is complete.'" *Pavelic & Leflore,* 110 S.Ct. at 456 58 U.S.L.W. at 4038 (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). Therefore, the rule applies only to pleadings, motions or other papers and not to "the entire conduct of the proceedings." *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *see also Levine v. Arabian American Oil Co.,* 664 F.Supp. 733, 735–36 (S.D.N.Y.1987) (Carter, J.) ("Under *Oliveri,* [movant] may not complain of the cumulative effect of plaintiffs' counsel's conduct, but only of specific pleadings, motions or other papers which fall short of the standards established by the rule.").

■ While the term "other papers" is somewhat ambiguous, courts have interpreted it to refer only to papers served or filed with the court. *See* 5 Wright, Miller & Kane, *Federal Practice and Procedure* 221 (1989 Supplement). The contention by

Brick and Bennett that Rule 11 should apply to any paper sent to the court, such as a letter, is not supportable.[1] While "other papers" does literally include discovery papers, they are more properly governed by the provisions of Fed.R.Civ.P. 26(g). *See* Advisory Committee's Notes on 1983 Amendment to Fed.R.Civ.P. 11 (quoted in 5 Wright, Miller & Kane (1989 Supp.) at 220).

"Sanctions shall be imposed against an attorney and/or his client when it appears that a pleading [or motion or other paper] has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact [and law]...." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985) (emphasis in original). "[T]here is no necessary subjective component to a proper rule 11 analysis." *Oliveri,* 803 F.2d at 1275. Rather, compliance is measured by an objective standard, and only "where it is patently clear that a claim has absolutely no chance of success" has Rule 11 been violated. *Eastway,* 762 F.2d at 254.

■ The objective requirement of a reasonable belief that the claim or defense is well-grounded in fact and law "applies only to the initial signing of a 'pleading, motion, or other paper.'" *Oliveri,* 803 F.2d at 1274. There is thus no obligation to update a pleading, motion or other paper based on new information provided that the document met the requirements of Rule 11 when signed. However, each subsequent pleading, motion or other paper must likewise meet the requirements of Rule 11 at the time it is signed. In determining whether the signer has met this objective requirement, "the court is to avoid hindsight and resolve all doubts in favor of the signer." *Oliveri,* 803 F.2d at 1275.

---

1. The only authority Triggs cites for this proposition, *Markel v. Scovill Mfg. Co.,* 657 F.Supp. 1102, 1112–13 n. 10 (W.D.N.Y.1987), *vacated without op.,* 859 F.2d 148 (2d Cir.1988), is inapposite. In that case, the Court found that the letters in question "were effectively treated as a motion" and held that in such an instance

"[c]ounsel for plaintiffs cannot avoid the requirements of Rule 11 by filing letters." *Id.* This Court has made no such finding and therefore is not required to address the question whether such letters would constitute "other papers" for purposes of Rule 11.

### b. Alleged Rule 11 Violations

Having set out the applicable standards, we now turn to an analysis of the alleged violations of Rule 11 by each of the defendants on the motion.

#### 1. BCR/Brignoli

Brick and Bennett seek a finding that BCR, through Brignoli, violated Rule 11 by filing the counterclaims, by filing the pretrial order and by various other conduct. While the claims lost on the merits, they were not patently meritless enough to warrant Rule 11 sanctions.

The claims brought on behalf of BCR alleged that Brick and Bennett had violated their fiduciary duty to BCR and breached the licensing agreement with BMI by allegedly failing to execute certain securities trades on behalf of BCR's clients as dictated by the BMI-licensed programs and by engaging in cross-trades, some of which allegedly violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1106(b). It is not disputed that Brick and Bennett engaged in cross-trading. The relevant questions were whether such cross-trading and the alleged failure to execute trades violated a duty owed to BCR and, if so, whether there were any recognizable damages.

■ It is not necessary or prudent to reargue the merits of the claims against Brick and Bennett at this time. It is sufficient to state that the Court finds that, while these claims were exceedingly weak, they were nevertheless objectively grounded in law and fact, at least facially.

The substantial amount of discovery performed by BCR's counsel provides evidence of compliance with the reasonable inquiry standard. In addition to discussions with Brignoli and David, the Scheffler law firm interviewed Charles Gessner, an employee of BMI, who performed a computer analysis of Brick and Bennett's trades. The discussions with these individuals and the computer generated analyses of the trades indicated to the Scheffler law firm that the claims were arguably well-grounded in fact. After the Scheffler law firm had been discharged, Breisblatt also interviewed Gessner and Brignoli and reviewed the Stock Sleuth program which was the subject of the licensing agreement and the basis for the claims against Brick and Bennett. Breisblatt also conducted depositions and interviews of several individuals, including the two experts, Stephen Berkowitz and Benjamin Lubin, as well as reviewed reports prepared by the securities firm of Able Noser on Brick and Bennett's trading. Breisblatt too believed that the claims were well-grounded.

The Court is satisfied that, based on these materials and others, BCR had a reasonably well-grounded argument that Brick and Bennett had breached the licensing agreement and their fiduciary duty to BCR at the time the answer was signed. The fact that summary judgment was neither sought nor granted lends credence to this finding, see Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 200 (footnotes omitted) ("If a baseless claim could have been readily disposed of by summary procedures, there is little justification for a claim for attorney's fees and expenses engendered in lengthy and elaborate proceedings in opposition."), as does the fact that neither directed verdict motion was granted.

■ Brick and Bennett contend that sanctions are appropriate at least for the pretrial order, because by that time, they allege, it was clear that the claims were baseless. Brick and Bennett base this contention on their allegation that no proof of damages was offered at trial. As Breisblatt notes in his affidavit, however, a solicitation letter for investors in Cornerstone Assets Management, a business formed by Curley, Karanfilian, Roberts and Bennett after they left BCR, was admitted in evidence during the trial. This letter referred to commissions earned by Brick Securities while conducting trades for BCR. While this letter might not have been sufficient proof of damages, it does constitute an argument for damages which survives the scrutiny of Rule 11.

Brick and Bennett further contend that sanctions should be applied because the counterclaim plaintiffs allegedly interposed the claims for improper purposes. Unlike the Seventh Circuit, the Second Circuit has never interpreted Rule 11 to mean that an

objectively meritorious claim may nevertheless violate Rule 11 if it is interposed for an improper purpose. *See, e.g. Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1436 (7th Cir.1987) ("[S]ubjective bad faith or malice may be important when the suit is objectively colorable."); *cf. Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir.1987) ("Because of the objective standard applicable to Rule 11, a complaint that is well-grounded in fact and law cannot be sanctioned regardless of counsel's subjective intent.").

The Second Circuit has left the question open: "... *Eastway* might be read as leaving open the possibility of imposing rule 11 sanctions where the attorney is guilty of a subjective violation of the rule," *Oliveri*, 803 F.2d at 1275. It is not necessary to decide this issue in the case at bar. Based on the proof offered, the Court has found no tangible evidence of bad faith.[2]

### 2. BMI

■ The only claim brought on behalf of BMI was for intentional interference with the licensing agreement, and it was dropped before the case proceeded to trial.

It is unclear "whether sanctions must be imposed when one argument in an otherwise non-frivolous motion [or pleading] is found to be utterly groundless.... [T]he Second Circuit [Court of Appeals] has apparently not yet directly addressed the issue ..." *Veliz v. Crown Lift Trucks*, 714 F.Supp. 49, 58 (E.D.N.Y.1989) (citing *Calloway, supra*, 854 F.2d at 1473 n. 9.). This Court need not address that question here.

For, while BMI dropped this claim before trial, Brick and Bennett have presented no tangible evidence to show that this particular claim was so "bogus from the start, reflecting an intolerably cavalier, 'kitchen sink' attitude," as to require the imposition of Rule 11 sanctions. *See Id.* at 59.[3]

### 3. Arie David Law Firm/Arie David

■ The Supreme Court has recently made it clear that only the individual attorney who signs a pleading, motion or paper is liable under Rule 11 and not the attorney's law firm, whether or not the law firm's name is listed above the lawyer's name. *Pavelic & LeFlore v. Marvel Entertainment Group, et al.*, —— U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (December 5, 1989). Therefore, the Arie David law firm is not liable, and David is potentially liable only for those papers which he personally signed.

■ Eliminating letters and discovery papers for the reasons described above, David is potentially liable only for the proposed jury charges, trial memoranda, notice of appeal[4] and the motion to vacate the jury verdict along with the corresponding legal memoranda. None of these papers violated Rule 11. As already stated, counterclaim plaintiffs' claims were weak but not frivolous. Therefore, the papers signed by David during the trial are not sanctionable. The motion to vacate and the notice of appeal were likewise unsuccessful on the merits. However, the Court cannot say that David was frivolous in challenging its rulings.

**2.** Both moving and non-moving parties have referred to events which occurred subsequent to trial in support of their arguments either for or against the motion for sanctions. For example, Brick and Bennett support their argument for finding bad faith by citing "letters written to various regulatory authorities" after the proceedings (Brick.Mem. 9), and defendants repeatedly cite the regulatory investigations into possible ERISA violations in support of the merit of the counterclaims. The Court has ignored such references. As already stated, liability under Rule 11 is measured as of the time the pleading, motion or other paper is signed. "A party's after-the-fact justifications for its actions are irrelevant to our inquiry." *U.S. v. Allen L. Wright Development Corp.*, 667 F.Supp. 1218 (N.D.Ill.1987).

**3.** Indeed, it is unclear whether the Court could sanction BMI after its claim had been voluntarily dismissed. In *Johnson Chemical Company, Inc. v. Home Care Products, Inc.*, 823 F.2d 28, 31 (2d Cir.1987), the Second Circuit held that after an entire action had been voluntarily dismissed "the court lost all jurisdiction over the action." The Court therefore vacated the Rule 11 sanctions. *Id.*

**4.** Although notices of appeal are filed with the appellate court, they are subject to the requirements of Rule 11. *See Thornton v. Wahl*, 787 F.2d 1151 (7th Cir.1986), *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986) ("Fed. R.Civ.P. 11 provides that every pleading or 'other paper'—a term that includes notices of appeal and appellate briefs—shall be signed ...").

#### 4. Scheffler Law Firm/Karlinsky

After *Pavelic & LeFlore*, only Karlinsky is a proper subject of this Rule 11 motion.

Because the answer and counterclaims he signed were not frivolous, Karlinsky did not violate Rule 11. In addition, as Triggs recognizes in his reply affidavit, even if the claims were frivolous, Karlinsky's "reliance on David and Brignoli ... may absolve him from Rule 11 liability." (Triggs.Rep.Aff. 7 n. 2.). Karlinsky's inquiry into whether the claims were well-grounded was reasonable.

#### 5. Welsh & Katz Law Firm/Breisblatt

After *Pavelic & LeFlore*, only Breisblatt is a proper subject of this Rule 11 motion.

As with Karlinsky, because the counterclaims were not "frivolous" within the purposes of the Rule, Breisblatt did not violate Rule 11 by signing the pre-trial order.

 The Court also finds that Breisblatt's inquiry was reasonable regardless of the merits of the counterclaims. Breisblatt was entitled to, and did, rely on forwarding counsel. "[R]eliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry." *Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 558 (9th Cir.1986) (citing Advisory Committee's Notes to Fed. R.Civ.P. 11), *cert. denied sub nom., Barton v. E.F. Hutton & Co., Inc.*, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) and *cert. denied sub nom., Alioto & Alioto v. E.F. Hutton & Co., Inc.*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987). However, "[a]n attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry." *Id.* Rather, he must acquire facts in addition to his reliance on forwarding co-counsel to enable him to certify that the paper is well-grounded. *See* Schwarzer, *Sanctions Under the New Federal Rule 11*, 104 F.R.D. at 187. Here, Breisblatt made his own inquiry. He properly interviewed and deposed employees of BCR and BMI and experts, and he personally reviewed documents which led him to believe that the counterclaims were sufficiently well-grounded in fact and law to warrant presenting them to the crucible of the trial.

#### c. Cross–Application for Rule 11 Attorney Fees

 Defendants on this motion argue that the motion is frivolous and that they are therefore entitled to attorneys' fees sufficient to cover their cost of litigating the motion. However, given the weakness of the counterclaims on the merits and this Court's statement in denying the second motion for a directed verdict, the Court finds that this Rule 11 motion was not objectively frivolous. The cross-applications for attorneys' fees are therefore denied.[5]

#### Conclusion

Both the motion for Rule 11 sanctions and the cross-applications for attorneys' fees are denied.

SO ORDERED.

---

**5.** Following the recent Supreme Court decision in *Pavelic & LeFlore*, Brick and Bennett's motion, if brought today, likely would violate Rule 11 insofar as it seeks sanctions against the law firms of the signers. However, because compliance with Rule 11 is measured from the date of signing the pleading, motion or other paper, Brick and Bennett's motion was objectively well-grounded in law and fact as of October 27, 1989, when the motion was signed.