Michelle LEGAULT, Plaintiff–Appellee,

v.

Alan ZAMBARANO, and Town of Johnston, Defendants–Appellees.

Ralph R. aRusso, Defendant–Appellant.

Michelle LEGAULT, Plaintiff–Appellee,

v.

Ralph R. aRUSSO, Alan Zabarano, and Town of Johnston, Defendants–Appellees.

Thomas A. Diluglio, Appellant.

Nos. 96–1566, 96–1567.

United States Court of Appeals, First Circuit.

Heard Oct. 9, 1996.

Decided Jan. 28, 1997.

Jeffrey S. Michaelson, with whom Julius C. Michaelson and Michaelson & Michaelson, Providence, RI, were on brief for appellants Ralph R. aRusso and Thomas A. DiLuglio.

G. Robert Blakey, with whom Ina P. Schiff, Providence, RI, was on brief for appellee Michelle Legault.

Before CYR and BOUDIN, Circuit Judges, and PONSOR,* District Judge.

PONSOR, District Judge.

This appeal challenges the propriety of the district court's imposition of monetary sanctions upon the defendant-appellant Ralph aRusso and his attorney Thomas DiLuglio for violations of Fed.R.Civ.P. 11, 16 and 26, committed during pretrial proceedings in this employment discrimination case. Finding no error, we affirm.

## I. BACKGROUND

In May of 1993 plaintiff-appellee Michelle Legault brought suit against the town of Johnston, Rhode Island, its mayor at the time, Ralph aRusso, and its fire chief, Alan Zambarano, contending that the defendants discriminated against her based on her gender when she applied for a position as a firefighter. On February 10, 1994 the district court found that Legault was likely to prevail and that inaction would cause her irreparable harm. Based on this, the court issued a preliminary injunction requiring the defendants to hire her. *Legault v. aRusso*, 842 F.Supp. 1479 (D.N.H.1994). On April 5, 1995 the case settled when the district judge signed a consent order awarding Legault judgment against the town for violations of Title VII, 42 U.S.C. § 1983 and two Rhode Island statutes. Subsequently, the town paid Legault's reasonable costs and attorney's fees.

In April 1994, following the preliminary injunction but before the consent order, Legault filed a motion for sanctions against aRusso, Zambarano and their attorney Thomas DiLuglio. The district court heard evidence on the motion over two days and on December 30, 1994 allowed the motion, in part, ordering that the three each be held responsible for one-third of the fees necessitated by their misconduct during discovery.

On March 29, 1996, following the settlement, the district judge denied a motion to reconsider his sanctions ruling and set the monetary penalty in the amount of $16,450. He ordered that each of the three parties be responsible for one-third of this sum. The court gave the town of Johnston the right to recover from the three any part of the fee already paid to Legault but caused by their wrongdoing.

DiLuglio and aRusso now claim that both the finding of misconduct and the award of the fees constituted error as a matter of law and an abuse of discretion. Neither Zambarano nor the town of Johnston has appealed either the sanctions decision or the judgment of discrimination.

* Of the District of Massachusetts, sitting by designation.

## II. *DISCUSSION*

A challenge to a trial judge's exercise of discretion in these circumstances carries an especially heavy burden. Over twenty years ago the Supreme Court sharply underlined the importance of supporting a trial court's decisions concerning sanctions, even where the judge imposed the most stringent sanction, outright dismissal, for misconduct in the pretrial phase of a case. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976). This circuit's decisions have been entirely consistent with the Supreme Court's directive. *See, e.g., Spiller v. U.S.V. Laboratories, Inc.*, 842 F.2d 535, 537 (1st Cir.1988); *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 17 (1st Cir.1983). In this legal medium the appellants' thin claims of abuse dissolve almost upon scrutiny.

As a threshold matter, appellants contend that appellee lacks "standing to participate" in this appeal. This argument is offered on the ground that the district court ordered that the $16,450 sanction be paid as a reimbursement to the town of Johnston, and not to Legault, to the extent that the town's prior payment of fees to Legault covered work necessitated by appellants' misconduct. The town of Johnston, they appear to claim, and not Legault, is the proper party to oppose this appeal, and it has chosen not to do so.

■ This is a meaningless quibble. The issue on this appeal is not the identity of the proper appellee, but whether the district court abused its discretion in awarding sanctions against the appellants. Legault, in fact, has an interest in this appeal because the appellants seek, among other things, a ruling from this court that the district judge erred in declining to impose sanctions on Legault herself.

Moreover, even if she lacked a personal stake in the outcome, this court would hear Legault as an *amicus curiae*. This is certainly not a case, if any such cases there be, where (as appellants' argument implies) a trial court's valid order should be vacated without consideration of its merits simply because the party opposing the appeal lacks technical eligibility to offer a contest.

Moving beyond this preliminary argument, then, we must address the four instances of misconduct that the district judge, after considering several possible grounds, found justified an award of sanctions.

### A. *Violation of Fed.R.Civ.P. 26(g) Re: Hiring Process.*

A detour into the merits of the underlying discrimination case is necessary in order to understand the basis for the trial court's action.

■ Although allegations of intentional discrimination—*i.e.*, discriminatory treatment—were included in Legault's complaint as originally filed, the early stages of the litigation focused on plaintiff's alternative claim of discriminatory *impact*. She contended that the three-part testing process for new firefighters in Johnston had the effect, not justified by any fair rationale, of excluding women from hiring. During discovery, and in opposition to the motion for preliminary injunction, defendants contended that the testing process, which included rigorous physical trials, was fair and reasonable and, further, that they actually followed it as an objective basis for determining who would get on the fire department. Both sides pursued this issue with energy at the preliminary injunction hearing, generating testimony of an expert and thirteen pages in the federal supplement devoted almost solely to disparate impact analysis. *Legault v. aRusso*, 842 F.Supp. 1479 (D.N.H.1994).

This whole exercise, as the district court later found and as the defendants now do not contest, was a complete waste of time. Performance on these supposedly objective tests bore little or no relation to an applicant's chances of getting a job on the Johnston fire department. Hiring decisions were, in fact, based on undisclosed, subjective criteria within the discretion of the defendants. The town's impressive edifice of purportedly objective, multi-stage testing was ultimately acknowledged to be a mirage—in the words of the district judge, "a sham."

Nevertheless, in answers to interrogatories served before the ruse was exposed, aRusso, assisted by DiLuglio as his attorney, stated that performance on the tests determined hiring rank. Judge Barbadoro found that these false responses constituted a flat violation of Fed R.Civ.P. 26(g)(2). It cannot remotely be said that he abused his discretion in reaching this conclusion.

Rule 26(g)(2) requires that every discovery response bear the signature of the attorney, certifying "to the best of the signer's knowledge, information and belief, formed after a reasonable inquiry" that the response is "(A) consistent with these rules ...; (B) not interposed for any improper purpose, such as to harass or cause unnecessary delay ...; and (C) not unreasonable...." [1]

Defendants' responses, the court could well have found, failed all three of these tests. Either as a result of deliberate intent, or gross negligence in failing to inquire into the real facts, the discovery responses were inconsistent with the rules, were interposed to harass and cause delay and were unreasonable.

Our conclusion that the trial judge did not abuse his discretion on *these* facts is not intended to suggest that a litigant and his attorney expose themselves to discovery sanctions every time their position ultimately fails to convince a court, or even where it enjoys only very weak support. The trial court found something here of an entirely different order. The initial position of the town and its officials was, in essence, a hoax perpetuated through their discovery responses and eventually conceded. This misconduct caused substantial delay and expense. Behavior of this sort may rightly be found to call for action by the trial judge.

Fed.R.Civ.P. 26(g)(3) states as follows.

If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on

whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

In this case the trial judge apportioned responsibility for the sanction equally between the lawyer and the parties, and limited the penalty to the fees reasonably expended by Legault in pursuing her motion for sanctions. Moreover, the plaintiff's requested sanction was carefully trimmed to eliminate what the court found to be excessive time. A more moderate and painstaking approach to the issue is hard to imagine. At the risk of repetition, no abuse of discretion occurred.

### B. *Violation of Fed.R.Civ.P. 11 Re: Selection Process.*

On August 13, 1993, three days before the initial hearing on Legault's motion for preliminary injunction before the Magistrate Judge, Attorney DiLuglio sent a letter to opposing counsel, which he copied to the court. This letter stated, falsely, that "[s]tandings in the obstacle course and the written exam determine overall standings in the application process."

Fed.R.Civ.P. 11, which parallels Rule 26(g) in all pertinent respects for purposes of this decision, applies to "[e]very pleading, written motion and other paper" presented to the court. Without contesting the falsity of the representation made in the August 13, 1993 letter, DiLuglio argues that it was an abuse of discretion for the trial judge to view the letter as an "other paper" for purposes of Rule 11.

Courts have been properly reluctant to characterize a letter generally as an "other paper" in weighing Rule 11 sanctions. *See, Curley v. Brignoli, Curley & Roberts, Assoc.,* 128 F.R.D. 613, 616 (S.D.N.Y.1989). In this case, however, DiLuglio deliberately copied his letter to the presiding Magistrate Judge

---

1. Judge Barbadoro applied the civil rules as they existed prior to the 1993 amendments since the misconduct occurred before their effective date, out of concern that application of the rules in their later form might be unfair to the defen-

dants. For ease of reference, because we perceive no unfairness, and because the outcome of this appeal would not change, we have applied the rules in their current form.

three days before the preliminary injunction hearing with the purpose "to advise the court and all parties" of its contents. He repeated the substance of the letter in his memorandum opposing the motion for preliminary injunction. Moreover, the letter's message—that Legault would have a fair chance at getting a job on the fire department if she did well on the tests—actually influenced Magistrate Judge Barry in making his recommendation (later rejected by the district court) that Legault receive only partial injunctive relief.

To hold under these circumstances that this particular letter sails beyond the reach of Rule 11 would be to exalt form over substance and reward the rankest gameplaying. DiLuglio sent this letter, the trial judge found, with the intent to influence the court, at a time and in a manner calculated to insure its impact. As it happened, it did influence the court substantially. Given this, the imposition of sanctions based in part upon the letter's false contents was no abuse of discretion.

### C. *Violation of Fed.R.Civ.P. 26(g) Re: Identification of Documents.*

■ The trial judge found that the defendants had improperly failed to produce four categories of documents in response to plaintiff's legitimate discovery requests: a report by an independent testing service listing each applicant's score on the written examination; a list of code numbers assigned to each applicant who took the written exam; a list showing the actual hiring rank of each applicant who took the training course, and pleadings in other civil rights cases against the town of Johnston.

The first three categories of documents, in particular, would have gone far to uncover the speciousness of the defendants' claim that applicants to the fire department received their jobs based on objective criteria. The court found that each of the four categories of documents was in the defendants' possession and that a reasonable search would have located them. The Advisory Committee's Notes to the 1983 amendments to Rule 26 spell out the obvious: a certifying lawyer must make "a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Here, the trial court's finding that no such effort was made is well supported. Imposition of sanctions under Rule 26(g)(3) constituted no abuse of discretion.

### D. *Violation of Rule 16.*

■ On December 16, 1993 the district court issued an order requiring the filing of all pretrial material on or before April 15, 1994. Defendants, it is conceded, did not comply. Their pretrial submission arrived over three weeks late, on or about May 9, 1994. The trial judge based his sanction decision, in part, upon this tardiness.

Rule 16(f) gives a trial judge faced with disregard of a pretrial order the power, upon motion or *sua sponte*, to "make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." In lieu of or in addition to this sanction, the court may order the offending party to "pay the reasonable expenses incurred because of noncompliance with this rule."

Appellants argue that, because the cited provisions of Rule 37 describe non-monetary sanctions, and because the district court made no explicit finding that the defendants' non-compliance with the court's pretrial order caused Legault any expense, imposition of a monetary penalty based (even in part) upon their acknowledged neglect of the court's order regarding filing of pretrial papers constituted an abuse of discretion.

We cannot agree. The extent to which a party's failure to file pretrial papers in a timely manner puts an opponent into an unfair position, by causing unnecessary preparation, confusion or distraction, and the translation of this unfairness into a sum of money, are tasks that must be left except in the most extraordinary circumstances to the good sense of the judge on the scene.

Beyond this the trial judge has an independent responsibility to enforce the directives he has laid down for the case. This court has made this point before in the clearest terms.

Rules are rules—and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.

*Mendez v. Banco Popular de Puerto Rico,* 900 F.2d 4, 7 (1st Cir.1990).

Here the judge's prudent assessment of the situation fairly jumps out of the record. We cannot say that including defendants' conceded disregard of his pretrial order into the mix of factors that brought him to the figure of $16,450 constituted an abuse of discretion.

Finally, given the ample justification for the award of sanctions against appellants, the district court certainly did not abuse its discretion in declining to impose sanctions upon Legault herself. While her sanction motion may have been overbroad, the core of her grievance was found to be well supported.

### III. *CONCLUSION*

In summary, this was a textbook job by the district court in considering and imposing sanctions. The offending parties were given clear notice of the claimed misconduct and ample opportunity to be heard. The judge sorted the unsupported or trivial violations from the substantial wrongdoing. He then imposed a sanction crafted to penalize only improprieties that were sufficiently egregious to warrant a penalty and clearly supported by the record. Both the amount and the targets of the sanctions were exactly specified. There was no error.[2]

*Affirmed.*

---

2. Plaintiff-appellee, though prevailing, should not view this opinion as a testament to the cogency of her written advocacy. Her brief, relying substantially on overcharged rhetoric and irrelevancy, is almost useless. It has been rescued by a combination of the essential weakness of appellants' position, the performance of the court below and a dexterous oral argument presented by substitute counsel.