**REEBOK INTERNATIONAL LIMITED, et al., Plaintiffs**

v.

**Roberto SEBELEN, et al., Defendants.**

**Civil No. 94–2677(SEC).**

United States District Court, D. Puerto Rico.

March 18, 1997.

Luis Sanchez–Betances, Sanchez, Betances & Sifre, San Juan, PR, Harley I. Lewin, James H. Donoian, Lewin & Laytin, P.C., New York City, for plaintiffs.

Jose A. Figueroa–Morales, San Juan, PR, Gustavo A. Martinez–Tristani, Figueroa–Morales & Chaves–Caraballo, San Juan, PR, for defendants.

## JUDGMENT BY DEFAULT

CASELLAS, District Judge.

In Herman Melville's classic tale, *Bartleby the Scrivener,* a lawyer becomes infuriated with his assistant scrivener who, when ordered to perform a task, always replies: "I prefer not to." In such a similarly infuriating situation we found ourselves in the present case, with the Court and the plaintiffs alike ordering defendants to comply with the litigation process, and the defendants continuously replying: "We'd prefer not to." Unlike Melville's character, who eventually reconciled himself with Bartleby's eccentric

recalcitrance, we decline to condone such behavior.

On February 25, 1997, this Court held a hearing to determine whether defendants Roberto Sebelen, George Perez Sebelen, Ranier Sebelen, Almacenes San Juan, CxA, Sebelen Imports Puerto Rico Inc. and Calzados Belen should be held in contempt for their alleged violation of the Court's Preliminary Injunction on Consent issued on January 30, 1995. (Docket # 54) On December 13, 1996, the Court also sanctioned defendants and their attorney Gustavo A. Martinez Tristani in the amount of $5,000.00 for filing frivolous motions, pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Notwithstanding the clear mandate of the Court, defendants and their attorney failed to comply with the Court's deadline to pay such sanctions by January 10, 1997. (Docket # 46) Furthermore, defendants had repeatedly failed to comply with the Court's orders to expedite discovery and collaborate in good faith with plaintiffs to bring this case to a speedy resolution. Accordingly, the Court also considered at the hearing whether defendants and their attorney should be held in contempt for the abovementioned reasons.

**Factual Findings**

Plaintiffs commenced the present action on December 15, 1994 pursuant to the Lanham Act, 15 U.S.C. § 1051, et. seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98–473. Plaintiffs alleged that defendants had engaged in the systematic manufacture, import, export, sale and distribution of counterfeit REEBOK footwear from Asia through the United States. On January 30, 1995, this Court entered the Preliminary Injunction to which defendants consented and which precluded defendants from, among other things,

> shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving or disposing of Infringing Footwear. (Docket # 10)

In February 1995, defendants represented to plaintiffs that they were "particularly interested in discussing settlement." See Declaration of James H. Donoian, December 13, 1995, ¶ 4 ("Donoian Dec."); (Exhibit A, Docket # 53). Following unsuccessful efforts to contact defendants' counsel, plaintiffs informed defendants that they needed to review specific documentation showing the sources and the quantities of counterfeit REEBOK shoes sold before agreeing to a settlement. Id., ¶ 4, Exhibit A.

Defendants belatedly responded to plaintiffs' requests by forwarding incomplete documentation of the underlying manufacture and sale of the subject shoes. Id. On April 13, 1995, plaintiffs requested the missing documentation they had earlier requested. Id. Notwithstanding repeated follow-up requests, defendants refused to voluntarily provide the missing documentation. Id., ¶ 4, Exhibit A.

Following multiple unsuccessful efforts to informally obtain discovery pertaining to defendants' counterfeiting activity, plaintiffs filed their first request for production of documents, first request for interrogatories and notices of defendants' depositions on September 26, 1995. (Donoian Dec., ¶ 5, Exhibit B) Defendants' responses were due by October 30, 1995. (See Donoian Dec., Dec. 13, 1995, ¶ 5). On or about November 7, 1995 (over a week after responses to plaintiffs' discovery requests were due), defendants filed a Motion Requesting Extension of Time to Answer Interrogatory [sic] and To Produce Documents Propounded by Plaintiffs. The Court denied that motion on November 27, 1995, for failure to comply with Rule 311.11. (Docket # 22)

Throughout late November and early December of 1995, defendants then staged on a "keystone-cops scenario," repeatedly breaking promises to produce the overdue discovery responses and dragging plaintiffs' counsel back and forth across the Caribbean to attend defendants' depositions in the Dominican Republic, only to refuse to sit for the depositions because plaintiffs had not secured a stenographic machine unavailable anywhere in the Dominican Republic. See Court's Order of December 13, 1996, p. 5. (Docket # 46)

On December 14, 1995, plaintiffs sought to compel defendants' discovery responses ("the First Motion to Compel") See Donoian Dec., ¶ 9, Exhibit B. Rather than complying with

plaintiffs' discovery requests, defendants filed a motion for summary judgment for lack of personal and subject matter jurisdiction on December 21, 1995. **(Docket # 26)**

On July 2, 1996, the Court denied defendants' summary judgment motion. **(Docket # 37)** Accordingly, on July 29, 1996, plaintiffs renewed their discovery requests, including notice of defendants' depositions. Donoian Dec. ¶ 13, Exhibit B. On August 5, 1996, defendants moved for a protective order prohibiting defendants' depositions in Puerto Rico, which plaintiffs opposed (after trying to resolve the dispute with defendants' counsel). This Court denied defendants' request. *Id.,* **(Docket # 41)**

On August 29, 1996, plaintiffs once again renewed their discovery requests, asking that defendants reply by September 8, 1996. Donoian Dec., ¶ 17. Defendants instead filed a motion seeking reconsideration of the Court's denial of their motion for summary judgment. **(Docket # 43)** Plaintiffs were forced to oppose yet another motion which was supported by neither fact nor law and was based upon misrepresentation of facts. Accordingly, plaintiffs also filed a cross-motion for sanctions and contempt simultaneously with their opposition. **(Docket # 45)** On December 13, 1996, this Court denied defendants' Rule 60(b) motion, granted plaintiffs' motion for sanctions and entered the sanctions order. **(Docket # 46).** On December 13, 1996, the Court ordered defendants to pay the amount of $5,000.00 dollars by January 10, 1997. We noted that failure to pay the prescribed amount may result in further sanctions from this Court. *Id.,* p. 6. Notwithstanding this clear mandate from the Court, defendants filed yet another motion for reconsideration, titled Motion to Alter and/or Set Aside Order. (Docket # 48) Plaintiffs filed their respective opposition. (Docket # 53) The Court held a hearing to elucidate that pending motion.

## Defendants' Contemptuous Conduct

██ Upon review of the facts before us, we conclude that defendants violated the Preliminary Injunction and tampered with the primary evidence in this case—the subject counterfeit REEBOK shoes which defendants shipped through the United States and which formed the basis of plaintiffs' initial request for a Temporary Restraining Order (the "Subject Shoes"). Defendants invoked a suspended judgment from a Court of the Dominican Republic to fraudulently obtain the release of the Subject Shoes which had been seized by Dominican Customs. (Docket # 53, Donoian Declaration of January 31, 1997, ¶ 27 and Exhibit H.)

Transferring the Subject Shoes was in clear violation of the Court's Preliminary Injunction prohibiting any transfer or other movement of the Subject Shoes or any other such counterfeit REEBOK shoes. **(Docket # 10)** Defendants have refused all demands to return the Subject Shoes and, according to plaintiffs, defendants may have sold or otherwise disposed of this critical evidence. *Id.* The Subject Shoes had been examined by an independent expert appointed by a Dominican Judge who determined the shoes were counterfeit. (Docket # 45, See Declaration of Luis M. Pereyra, dated September 16, 1996, ¶¶ 1 1, 12, Exhibit D)

With regards to defendants' Motion to Amend or Alter Judgment, we need not engage in a lengthy discussion to deny it. Upon consideration of the applicable law and the parties' respective arguments, defendants' motion is **DENIED.** (Docket # 48) Defendants have failed to sway the Court that our previous rulings are defective. The Court has previously engaged in a comprehensive discussion of the extraterritorial jurisdiction pursuant to the Lanham Act, as well as the basis for sanctions under Rule 11 and 28 U.S.C. § 1927 and we find no compelling reasons to alter our decisions of July 2, 1996 and December 13, 1996, respectively. **(Docket # 37, 46)**

## Entry of Default Judgment:

██ Pursuant to defendants' egregious efforts to frustrate plaintiffs' discovery, including defendants' violation of this Court's orders, it is now clear that defendants have no serious intention of participating in discovery or in this litigation. In light of this fact, entry of an order striking defendants' answer and entering a judgment by default is appropriate.

A "court is not necessarily required to attempt less severe sanctions before turning to the sanction of dismissal ... nor is a court required to provide an adversary hearing before imposing this sanction." *Farm Construction Servs., Inc. v. Fudge,* 831 F.2d 18, 20 (1st Cir.1987) (citing *Link v. Wabash R.R.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962)). As properly noted by plaintiffs, Courts have entered judgment by default or dismissed an action for abusive discovery practices in less dire circumstances. *Marshall v. F.W. Woolworth, Inc.,* 122 F.R.D. 117, 118–19 (D.P.R.1988)(failure to answer interrogatories for almost one year; affirmative defenses stricken and default judgment entered; "[d]efendant's failure to fully answer interrogatories shows deliberate effort to impede discovery and disrupt the scheduled trial date."); *see aso CIA Petrolera Caribe, Inc. v. ABBA Serv. Center,* 116 F.R.D. 90 (D.P.R.1987) (striking answer and awarding default judgment for failure to comply with discovery orders).

Further, dismissal may generate a powerful deterrent effect. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (noting that even if Court believes lesser sanctions will appropriately chastise recalcitrant party and ensure future compliance, default sanction might well be appropriate as deterrent lest "other party to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.")

The First Circuit recently addressed the issue of sanctions upon defendants. *Legault v. Zambarano,* 105 F.3d 24 (1st Cir.1997). In that case, the district court imposed monetary sanctions upon defendant and his counsel for misconduct during discovery. The Court of Appeals affirmed the district court's imposition of sanctions. We heed the First Circuit's exhortation to district court judges to keep a tight rein over their judicial proceedings:

A challenge to a trial judge's exercise of discretion in these circumstances carries an especially heavy burden. Over twenty years ago the Supreme Court sharply underlined the importance of supporting a trial court's decisions concerning sanctions, even where the judge imposed the most stringent sanction, outright dismissal, for misconduct in the pretrial phase of a case. *National Hockey League v. Metropolitan Hockey Club. Inc.,* 427 U.S. 639, 643–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) ... This circuit's decisions have been entirely consistent with the Supreme Court's directive. *See, e.g. Spiller v. U.S.V. Laboratories, Inc.,* 842 F.2d 535, 537 (1st Cir. 1988) *Damiani v. Rhode Island Hosp.,* 704 F.2d 12, 17 (1st Cir.1983). *Id.* at 26.

The First Circuit continued:

The extent to which a party's failure to file pretrial papers in a timely manner puts an opponent into an unfair position, by causing unnecessary preparation, confusion or distraction, and the translation of this unfairness into a sum of money, are tasks that must be left except in the most extraordinary circumstances to the good sense of the judge on the scene. Beyond this the trial judge has an independent responsibility to enforce the directives he has laid down for the case. This court has made this point before in the clearest terms.

"Rules are rules—and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance." (Citing *Mendez v. Banco Popular de Puerto Rico,* 900 F.2d 4, 7 (1st Cir.1990)). *Id.* at 28–29.

In light of defendants' tactics in this case— openly violating the Preliminary Injunction, tampering with evidence, flooding the docket with frivolous motions, stalling any and all discovery for over a year, answering the sanctions order with yet another frivolous motion, and ignoring the Court's order to pay sanctions—this Court has no other recourse but to enter default judgment against defendants. The Court in particular marvels at

counsels' continuous and recalcitrant insistence regarding the Court's lack of subject matter jurisdiction, an issue upon which the Court ruled not once, but twice, and after which the Court expressly ordered defendants to engage in discovery proceedings. (See Court's Orders of July 2, 1996 and December 13, 1996, Docket # 37, 46) Time and again during the February 25 hearing, counsel Gustavo A. Martinez Tristani refused to provide a cogent and persuasive justification for the defendants' failure to comply with the discovery proceedings, to timely pay the Court-imposed sanctions and to account for the missing Subject Shoes. Like a modern-day Bartleby, counsel Martinez Tristani, upon the Court's repeated inquiries regarding the breach of the preliminary injunction and the noncompliance with discovery orders, figuratively replied, "I would prefer not to address those issues but rather talk about the lack of jurisdiction."[1] Such nonchalant behavior, this Court will not tolerate.

Pursuant to the above mentioned facts and discussion of the applicable law, the Court issues the following holding:

Defendants violated this Court's Order of December 13, 1996 (the "Sanctions Order"), by failing to immediately comply with plaintiffs' outstanding discovery requests as ordered. Defendants' counsel Gustavo A. Martinez Tristani violated the sanctions order by failing to pay sanctions of five thousand dollars ($5,000.00) by January 10, 1997 as ordered (See Docket # 46). Defendants and their counsel have served and filed a series of motions for the improper purposes of causing harassment, unnecessary delay and needless increase in the cost of litigation, all in violation of Federal Rule of Civil Procedure 11.

Accordingly, defendants Roberto Sebelen, George Perez Sebelen, Ranier Sebelen, Almacenes San Juan, CxA, Sebelen Imports Puerto Rico Inc. and Calzados Belen are found in contempt of the Preliminary Injunction and the Sanctions Order. Defendants' counsel Gustavo A. Martinez Tristani is found in contempt of the Sanctions Order. Civil contempt occurs when a party is shown by clear and convincing evidence to have violated a clear and unambiguous injunction or order. *Gemco Latinoamerica, Inc., v. Seiko Time Corp.,* 61 F.3d 94, 98 (1st Cir. 1995).

Two requirements must be satisfied for finding a party in contempt for violation of an injunction or order: the actors charged with contempt i) must be among the persons bound by the injunction or order, and ii) must have had notice of the injunction or order. See 11 C. Wright and A. Miller, *Federal Practice and Procedure,* §§ 2956, 2960 (1973); Fed.R.Civ.P. 65(d). It is ineluctably clear that defendants Roberto Sebelen, George Perez Sebelen, Ranier Sebelen, Almacenes San Juan, CxA, Sebelen Imports Puerto Rico Inc. and Calzados Belen were aware of the Preliminary Injunction. (See Docket # 10, Stipulated Preliminary Injunction, p. 1–2) Counsel Gustavo Martinez Tristani was not counsel for defendants at the time, and thus will not be held personally liable.

This court has inherent authority to enforce its orders which includes the power to punish the defendants' violation of the Preliminary Injunction and the Sanctions Order. *Waffenschmidt v. MacKay,* 763 F.2d 711, 716 (5th Cir.1985). This power enables the court to hold defendants in contempt even where the defendants' violation is outside this district. *Id.* at 716; *United States v. Reed,* 773 F.2d 477, 481 (2d Cir.1985) (the contumacious conduct may be punished in the district where the order was issued whether or not the acts occurred elsewhere,

---

1. The Court acknowledges the irony in our classical allusion to Melville's tale. Bartleby is a scrivener for a lawyer, whose only duty is to transcribe certain legal documents. However, anytime that the lawyer requested Bartleby to review the documents he had transcribed, Bartleby replied: "I would prefer not to." Soon enough, Bartleby's function as scrivener and legal aide becomes obsolete, as he cannot be relied to perform anything else beyond the most basic transcriber's duties. We believe this fable serves as a useful reminder that the lawyer's role extends beyond filing motions and be an unquestioning mouthpiece for his client. His role is to engage in the adversarial process in good faith and in accordance with the Federal Rules of Civil Procedure, to "ensure the just, speedy and inexpensive determination of every action." Fed. R.Civ.P. 1.

the effects of the acts fell elsewhere or the evidence thereof is located elsewhere.)

■ Defendants through their counsel at the time negotiated and consented to the terms of the Preliminary Injunction forbidding them from, *inter alia*, transferring, moving or offering for sale and/or selling counterfeit REEBOK footwear. Defendants likewise were fully aware of the provisions of the Sanctions Order. Accordingly, defendants are inextricably bound by and had knowledge of the Preliminary Injunction and the Sanctions Order. Accordingly, a finding of contempt against defendants is appropriate.

Sanctions in civil contempt proceedings serve two functions: (1) to coerce a defendant into future compliance with a Court's injunction or order; and/or (2) to compensate a complainant for losses sustained and expenses incurred as a result of defendant's past contumacy. *International Union, UMWA v. Bagwell,* 512 U.S. 821, 828–30, 114 S.Ct. 2552, 2558, 129 L.Ed.2d 642 (1994); *see also United States v. United Mine Workers of America,* 330 U.S. 258, 303–304, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947).

In essence, once civil contempt is established, a court must award a party all of its damages resulting from the contemptuous conduct. *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573–74, 57 L.Ed.2d 522 (1978) *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83(1979). Such compensation can include remedial or compensatory fines, including daily fines, attorneys fees, costs, and jail sentences. *Id.*

■ In the present case, plaintiffs have suffered and will continue to suffer irreparable injury to their business reputation and good will as a result of defendants' activities. Defendants' counterfeit REEBOK shoes are inferior in quality (Docket # 45, Richard Bursaw Report, Exhibit D to Pereyra Dec.). Such shoes are now in defendants' possession and control in contravention of the Preliminary Injunction. Plaintiffs argued that such shoes have probably reentered the mainstream of commerce where they will create additional profits for defendants and harm to plaintiffs. *See SMI Indus. Canada Ltd. v. Caelter Indus., Inc.,* 586 F.Supp. 808, 823, 824 (N.D.N.Y.1984)(irreparable harm present when plaintiff is deprived of ability to control the quality of goods being sold by defendant);

Accordingly, defendants shall place into the possession, custody and control of plaintiffs or their counsel, at no cost to plaintiffs and **no later than April 30 1997,** all of the Subject Shoes removed from the Dominican Republic Customs in violation of the Preliminary Injunction. In addition, defendants Roberto Sebelen, George Perez Sebelen, Ranier Sebelen, Almacenes San Juan, CxA, Sebelen Imports Puerto Rico Inc. and Calzados Belen shall pay to plaintiffs a compensatory and/or punitive fine of **THIRTY THOUSAND DOLLARS** ($30,000.00) representing attorneys' fees incurred by plaintiffs as a result of defendants' failure to comply with discovery and the sanctions order.[2] We itemize the award as follows:

a. **FIVE THOUSAND DOLLARS** ($5,000.00) relating to plaintiffs' discovery requests, preparation for depositions and flying to the Dominican Republic. (Docket # 53, Exhibit C)

b. **FIVE THOUSAND DOLLARS** ($5,000.00) relating to plaintiffs' motion to compel defendants' discovery responses. *Id.*

c. **TWENTY THOUSAND DOLLARS** ($20,000.00) relating to plaintiffs' opposing and otherwise responding to defendants' numerous frivolous motions, specifically including plaintiffs' Opposition to Defendants' First Motion for Reconsideration, Plaintiffs' Cross Motion for Contempt, Sanctions and Second Motion to Compel. *Id.*

In the event defendants fail to place the Subject Shoes into the possession, custody and control of plaintiffs or their counsel as ordered, defendants shall, in addition to the fine set forth above, must pay to plaintiffs a compensatory fine of **$333,244.80.** (See Don-

2. See *Champion Spark Plug Co. v. Sanders,* 102 F.Supp. 340 (D.C.N.Y.1952) (In contempt proceedings for violating injunction decree in trademark infringement and unfair competition, legal expenses incurred by manufacturers as result of infringement were recoverable as part of compensatory damages.)

oian Dec., ¶ 28 and Exhibits I–K)[3], which represent defendants' gross sales derived from the Subject Shoes.[4] This amount will be trebled pursuant to 15 U.S.C. § 1117 for a total of $999.734.40.[5] We will deduct the amount of $196,080.00 for the costs of production upon defendants for a grand total of $803,654.40.[6] All fines levied under this paragraph shall be reduced prorata by the number of the Subject Shoes, if any are actually returned to plaintiffs by defendants.[7]

Finally, counsel Gustavo A. Martinez Tristani and defendants Roberto Sebelen, George Perez Sebelen, Ranier Sebelen, Almacenes San Juan, CxA, Sebelen Imports Puerto Rico Inc. and Calzados Belen are hereby **ORDERED** to pay the amount of **FIVE THOUSAND DOLLARS** ($5,000.00) for contempt of the Court due to their failure to comply with the Court's order of December 13, 1996. **(Docket # 46)** The present sanctions order supersedes our previous order imposing a fine in the amount of $5,000.00 Defendants and counsel Martinez Tristani are jointly liable for this fine and must pay it by **April 30, 1997.** This amount of $5,000.00 may be accredited to defendants in their payment of plaintiffs' attorneys' fees. Defendants and counsel's failure to comply with this order within the prescribed time period shall result in further sanctions from this Court, pursuant to Local Rules 114, 312 and Fed.R.Civ.P.

---

**3.** See *Dive N' Surf, Inc. v. Anselowitz*, 834 F.Supp. 379 (M.D.Fla., 1993) ("Use of trademark owners' estimates of their damages was appropriate in awarding treble damages to fashion just and reasonable compensation for infringement and to deter future infringement; infringer consistently refused to answer deposition questions about volume of and profits from sales of counterfeit t-shirts.")

**4.** We calculated the gross sales pursuant to the parties' documentation and the evidence proffered at the hearing. (Docket # 53) 18,240 pairs × $18.27 = $333,244.80

**5.** We base our computation of treble damages pursuant to plaintiffs' assessment of the economic damages suffered and their documentation proffered in their motion for entry of default judgment. Since defendants have failed to provide any persuasive opposition to plaintiffs' assessment of costs, and they have deliberately failed to provide the adequate documentation to ascertain in the most exact manner the losses

16(f). Judgment by default is hereby entered accordingly.

**SO ORDERED.**

sustained by plaintiffs, we find such assessment adequate to guide us in our imposition of damages. See *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966 (2d Cir.1985)(" Recovery under statute prohibiting trademark counterfeiting [Lanham Trade–Mark Act, §§ 35, as amended, 15 U.S.C.A. § 1117] is not limited to cases in which quantum of actual damages is demonstrated; rather, plaintiffs may recover profits reaped by defendant from its infringing activity, and where defendant fails to produce evidence to refute plaintiffs' evidence of defendant's sales of counterfeit products, court must rely on less certain methods of proof.")

**6.** The Court calculated defendants' costs of production from the information proffered by plaintiffs at the January 27 hearing 18,240 × 10.75 = $196,080.00.

**7.** Plaintiffs shall inform the Court of the amount of Subject Shoes returned to them within the prescribed time period, and will submit the appropriate documentation to adjust the imposition of damages upon defendants.