**CENTURY ML–CABLE CORPORATION, et al., Plaintiffs,**

v.

**Edwin F. Carrillo DIAZ, et al., Defendants.**

**No. 98–1193(PG).**

United States District Court, D. Puerto Rico.

Feb. 8, 1999.

**122**

Francisco A. Besosa & Marshal D. Morgan, San Juan, P.R., for plaintiffs.

Raymond L. Sánchez–Maceira, San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This matter having come before the Court on the motion of the plaintiffs Century–ML Cable Corporation and Century–ML Cable Venture (collectively, "plaintiffs" or "Cable TV") requesting an award of monetary damages, costs and reasonable attorneys' fees incurred in prosecuting this action against defendant Edwin F. Carrillo Díaz, and the Court having considered the submissions and affidavits filed by them with respect to the motion, it hereby makes the following findings and rulings:

## PROCEDURAL HISTORY

On April 9, 1998, Plaintiffs filed a "Motion and Memorandum for Order to Show Cause Why Defendant Carrillo Should Not Be Held in Civil Contempt of the Court's Prior Orders and in Violation of Fed. R.Civ.P. 37 and a Default Judgment Entered Against Him Together with an Award of Attorneys' Fees" ("Motion for Contempt"). The basis for the Motion for Contempt was defendant Carrillo's contumacious conduct of destroying evidence of his illegal cable converter/decoder modification business after the Court specifically ordered that such evidence not be destroyed. Included among the evidence destroyed were records and client lists of Carrillo's illegal decoder modification business, as well as a laptop computer allegedly used in the illegal modification of cable TV converter/decoders.

On August 28, 1998, this Court issued an Order ("Order") granting Plaintiffs the relief requested in the Motion for Contempt and further gave Plaintiffs 45 days within which to submit a breakdown of their costs, attorneys' fees and damages stemming from defendant Carrillo's illegal decoder modification business. In accordance with that Order, Plaintiffs submitted a Motion and Memorandum of Law with Affidavits attesting to the nature and amount of the costs, attorneys' fees and damages that they incurred and/or suffered as a result of defendant Carrillo's illegal conduct.

## FINDINGS OF FACT

■ The defendant has been held in civil contempt for his actions described above by this Court in an Order dated August 28, 1998. As a sanction for that civil contempt, and with respect to Plaintiffs' requested relief under Rule 37(b)(2), the Court entered a default judgment against defendant Carrillo. *See Reebok Intern. Ltd. v. Sebelen,* 959 F.Supp. 553, 556–57 (D.P.R.1997). In addition to the entry of default judgment as a contempt and Rule 37 sanction, the defendant has

failed to appear or defend in this action and has been adjudged in default under a separate and prior Order of the Court, dated June 24, 1998 (docket no. 41). It is well established that upon a default for a "failure to plead or otherwise defend" against a complaint, a defendant admits every "well-plead allegation" of the complaint, except those relating to damages. *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2nd Cir.1986) ("In principle, [the defendant] had no standing to participate in the further adjudication of issues as to its liability to plaintiffs."); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *Flaks v. Koegel*, 504 F.2d 702, 704 (2d Cir.1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established unless the amount is liquidated or susceptible of mathematical computation"); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Therefore, the Court makes the following findings of fact with respect to the Plaintiffs' costs, attorneys' fees and damages in this case.

Plaintiffs brought this action under the Communications Act of 1934, *as amended*, Title 47 U.S.C. §§ 553 and 605 (the "Communications Act"). As this Court has previously found, the defendant modified the Plaintiff's cable television decoding devices so that they would be capable of intercepting and permitting viewing of all of Plaintiffs' scrambled programming services, including premium and Pay Per View services, in violation of § 553(a)(1) and § 605(a) and (e) of the Communications Act. Plaintiffs' claims are based on an investigation of the defendant that resulted in the seizure of numerous cable television decoders that had been modified in such a manner as to enable them to steal all of Plaintiffs' programming services. The tests performed by Cable TV on the seized devices evidenced that they enabled their users to descramble all of Plaintiffs' programming services, including premium and Pay Per View services.

As part of the execution of the temporary restraining order, dated February 26, 1998, Plaintiffs seized 86 tags each of which was used by Carrillo to identify one of his clients for whom he had modified Cable TV converters/decoders. Each of the 86 tags seized contained an imprinted number ranging from 65 to 688. The numbers on the tags comport with what defendant Carrillo himself admitted to Mr. Vázquez, Plaintiff's initial counsel in this action, was the total number of clients that he had, 750. *See* Vázquez Affidavit at par. 4; *see also,* Affidavit of Plaintiff's investigator José Marrero, at pars. 8, 10, 19, 25 (discussing the "hundreds" of clients that Carrillo must have had and the system of numbering for each client).

■ Plaintiffs now seek a finding by this Court of defendant's precise monetary liability under 47 U.S.C. §§ 605(a) and (e) and 553(a) for his violations of these statutes resulting from his assistance in the unauthorized reception of Plaintiffs' cable programming. In pertinent part, § 553(a)(1) provides:

No person shall intercept or receive ... any communications service offered over a cable system unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Subsection (a)(2) states as follows:

For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

In pertinent part, section 605(a) provides:

No person not being authorized by the sender shall intercept any radio communications and divulge or publish the contents of such intercepted communication to any person.

47 U.S.C. § 605(a). Similar to subsection 553(a)(2), subsection (e)(4) states:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by subsection (a), shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

Both sections 605 and 553 of the Communications Act prohibit the unauthorized reception of cable television programming services and the sale of pirate cable television devices. *International Cablevision, Inc. d/b/a Adelphia Cable v. Sykes*, 75 F.3d 123 (2d Cir.1996); *United States v. Beale*, 681 F.Supp. 74, 76 (D.Me.1988); *International Cablevision, Inc. v. Noel*, 982 F.Supp. 904 (W.D.N.Y.1997); *Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 328 (E.D.N.Y. 1996); *Time Warner Cable of New York City v. Freedom Electronics, Inc.*, 897 F.Supp. 1454 (S.D.Fla.1995); *Cablevision Systems Corp. v. Muneyyirci*, 876 F.Supp. 415 (E.D.N.Y.1994); *Oceanic Cablevision v. M.D. Electronics*, 771 F.Supp. 1019 (D.Neb.1991); *TKR Cable Co. v. Cable City Corp.*, 1996 WL 465508 (D.N.J. July 29, 1996) (Brown, J.); *c.f. United States v. Norris*, 88 F.3d 462 (7th Cir.1996); *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727 (D.R.I. 1996).

## A. *Plaintiffs' Election of Statutory Damages for Defendants' Violations of 47 U.S.C. §§ 605 and 553*

As a party possessing "proprietary rights" in the communications which the defendant intercepted, plaintiffs are "aggrieved persons" and thereby authorized to bring this civil action against defendant pursuant to 47 U.S.C. §§ 605(e)(3)(B) and 553(c)(2). *Freedom Electronics*, 897 F.Supp. at 1459; *TKR Cable Co.*, 1996 WL 465508 at *10–*11. In accordance with their statutory rights under 47 U.S.C. section 605(e)(3)(C)(i) and section 553(c)(3)(A), the Plaintiffs have elected to recover money damages against the defendant in the form of statutory damages, as opposed to actual damages.

As set forth in the affidavit of Jeffrey Engleman of Cable TV, Carrillo modified decoders for use on Cable TV's system for profit. As noted in par. 4 of the Vázquez affidavit, Carrillo has admitted to having as many as 750 clients, for each whom he has illegally modified at least one, if not more, decoders. In addition, the Engleman affidavit states that under Carrillo's illegal decoder modification business, each modified decoder enabled a user to steal approximately $32.60 in premium and approximately $559.00 in Pay Per View and Special Events Programing services per month. Engleman aff. at par. 20. Furthermore, pirate decoders have been found to have a typical useful life of 7–10 years. *Time Warner Cable of New York City v. Cable Box Wholesalers*, 920 F.Supp. 1048, 1053 (D.Ariz.1996). Therefore, over the life of each decoder, Cable TV could lose in upwards of $60,000. Multiplying that figure by each of Carrillo's 750 clients, Cable TV stood to lose in the range of $45,000,000 as a result of Carrillo's illegal decoder modification business. Engleman aff. at par. 20.

Under the circumstances, based on (1) the tags seized from the execution of the civil seizure order at the homes of Carrillo and López, numbering up to 688, (2) testimony from José Marrero in his February 23, 1998 affidavit stating that each tag number referred to each client rather than to each converter (*see* Marrero Aff. at

¶ 25), (3) testimony from José Marrero in his February 23, 1998 affidavit stating that co-defendant Strubbe concluded that Carrillo had "hundreds of clients" (*see* Marrero Aff. at ¶ 10), and (4) Carrillo's admission to José Vázquez that he had as many as 750 clients, this Court finds that Carrillo engaged in 750 violations of the Communication Act.

Title 47, section 605(e)(3)(C)(i)(II) of the United States Code provides, "for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000.00, or more than $100,000.00, as the court considers just." *See U.S. Cable T.V.,* 920 F.Supp. at 329. Similarly, under 47 U.S.C. § 553(b) and (c), this court can award statutory damages for each violation in a sum of not less than $250 or more than $10,000 as the court considers just. *Id.* at 328–329. Cable TV has requested that it be awarded $10,000.00 for each of defendant Carrillo's 750 acts in violation of the Communications Act. This amount represents the *maximum* statutory compensatory damages pursuant to 47 U.S.C. § 553(b) & (c) and the *minimum* statutory compensatory damages pursuant to 47 U.S.C. section 605(e)(3)(C)(i)(II). This Court considers $10,000 per violation a just figure.

Sections 553 and 605 of the Communications Act also contain provisions which authorize a court to increase the base award of plaintiffs'· actual damages when the defendant is found to have willfully violated the Communications Act for either private financial gain or commercial advantage. Under section 605, the court has discretion to award up to an additional $100,000.00, while under section 553, an additional $50,-000.00 may be awarded. 47 U.S.C. section 605(e)(3)(C)(ii) and section 553(c)(3)(B).

In the present case, this Court believes that enhanced damages for the defendant's willfulness and purpose of private financial gain or commercial advantage in violating the Communications Act are warranted. In civil actions, the requisite state of mind

for willfulness has been defined as a "disregard for the governing statute and an indifference to its requirements." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126–27, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). This standard has been applied to actions under the Communications Act. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 851 (11th Cir.1990). Although plaintiffs are entitled to every reasonable inference from the evidence offered, *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981), and defendant's civil contempt and default alone may be viewed as evidence of willfulness, *Fallaci v. New Gazette Literary Corp.,* 568 F.Supp. 1172, 1173 (S.D.N.Y.1983), *Fitzgerald Publishing Co. v. Baylor,* 807 F.2d 1110, 1115 (2d Cir.1986), there is ample proof of defendant's willfulness herein. The undisputed facts surrounding Carrillo's illegal decoder modification business themselves are evidence of the requisite "willfulness and private financial gain or commercial advantage" for which sections 605 and 553 of the Communications Act enable the Court, in its discretion, to award additional monetary damages up to $100,000.00 and $50,-000.00, respectively for each violation. *See* 47 U.S.C. sections 605(e)(3)(C)(iii) and 553(c)(3)(B).

In light of the greater statutory protection afforded to an aggrieved cable operator under § 605 for unauthorized interception of cable programming services, but keeping in mind the statutory damages awarded, this Court feels it is appropriate in this case to grant Plaintiffs the enhanced damages of $100,000 for defendant's willfulness and private financial gain under the more stringent § 605 with respect to all violations. See *Time Warner Cable of New York City v. Olmo,* 977 F.Supp. 585, 589 (E.D.N.Y.1997) ("In this case, since defendant violated both §§ 553 & 605, the court must assess damages under the more severe provisions of § 605"), *citing, Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.,* 1991

WL 58350 (E.D.N.Y. March 20, 1991) (Chrein, M.J.).

## B. *Reasonable Attorneys' Fees*

Section 605 of the Communications Act provides that the court *"shall* direct recovery of full costs, including the award of reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Under 47 U.S.C. § 553(c)(2)(C), an award of attorney's fees to the successful aggrieved party is within the court's discretion. *Id.; See U.S. Cable T.V.*, 920 F.Supp. at 329. Given the burden borne by cable operators to protect and redress their statutory rights through civil actions from what is also criminal conduct, and as this Court has already determined in the past, (See Order dated August 28, 1998), Plaintiffs are entitled to receive their costs and reasonable attorneys' fees in prosecuting this action against defendant Carrillo.

Attached hereto is a schedule summarizing the affidavits of Francisco A. Besosa, Esq., José Vázquez, Esq. and Patrick J. Sullivan, Esq. reflecting the itemized attorneys' fees and expenses broken down according to each attorney for each law firm representing Plaintiffs in this action. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983). The Court finds these costs and attorneys' fees to be reasonable. (See attached Schedule of Attorneys' Fees, Costs and Damages).

Therefore, pursuant to the foregoing, it is

**ORDERED** that Plaintiffs' Motion and Memorandum Regarding Damages Against Edwin F. Carrillo is hereby **GRANTED;** and it is further

**ORDERED** that the Defendant pay to the Plaintiff the amount of $75,428.13 to cover its costs and attorneys fees in accor-

dance with 47 U.S.C. § 605(e)(3)(B)(iii), and it is further

**ORDERED** that the Defendant pay to the Plaintiff the amount of $7,500,000 in statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages in accordance with 47 U.S.C. § 605(e)(3)(C)(ii), and it is further

**ORDERED** that the preliminary injunction entered by this Court on March 9, 1998, pursuant to § 553(c)(2)(A) and § 605(e)(3)(B)(i), enjoining defendant from, *inter alia,* selling, modifying and/or distributing cable television decoding devices, shall be modified and merged into a permanent injunction.

**IT IS SO ORDERED.**

## SCHEDULE OF ATTORNEYS' FEES, COSTS AND DAMAGES

Attorneys' Fees Axtmayer Adsuar Muñiz & Goyco, P.S.C.:

| | |
|---|---|
| Francisco A. Besosa Stubbe, Esq.: | $ 2,174.00 |
| Marshal D. Morgan, Esq.: | $15,900.00 |
| Paralegal Ana Feliciano: | $ 2,910.00 |
| TOTAL AAMG FEES: | $20,984.00 |
| TOTAL AAMG COSTS: | $ 1,827.30 |
| **TOTAL AAMG COSTS AND FEES:** | **$22,811.30** |

Attorneys' Fees José Vázquez, Esq.:

| | |
|---|---|
| José Vázquez, Esq. Fees: | $24,450.00 |
| José Vázquez, Esq. Costs: | $ 0.00 |
| **TOTAL VÁZQUEZ COSTS AND FEES:** | **$24,450.00** |

Attorneys' Fees Daniel J. Lefkowitz, Esq., P.C.:

| | |
|---|---|
| Daniel J. Lefkowitz, Esq.: | $ 6,540.00 |
| William Jung, Esq.: | $ 35.00 |
| Patrick J. Sullivan, Esq.: | $18,585.00 |
| Wayne Louis, Esq.: | $ 908.00 |
| Joe Evans, Esq.: | $ 1,005.00 |
| Jennifer Schaefer, Esq.: | $ 115.00 |
| Total Fees: | $27,188.00 |
| Total costs: | $ 978.83 |
| **TOTAL LEFKOWITZ FEES & COSTS:** | **$28,166.83** |

| | |
|---|---|
| TOTAL ATTORNEYS' FEES AND COSTS: | $75,428.131 |
| STATUTORY DAMAGES in Accordance with 47 U.S.C. § 605(e) 750 violations @ $10,000 per violation: | $7,500,000.00 |
| Plus additional damages under § 605(e)(3)(C)(ii): | $ 100,000.00 |

1. Because there are several other defendants still involved in this action, this figure for costs and attorneys' fees was adjusted so as to include only those costs and attorneys' fees attributable to the prosecution of this action against defendant Edwin Carrillo.

TOTAL FEES, COSTS AND DAMAGES: $7,675,428.00