USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1858

 OLGA G. NEGRON GAZTAMBIDE,

 Plaintiff, Appellee,

 v.

 ZAIDA HERNANDEZ TORRES, ET AL.,

 Defendants, Appellees.

 HON. CHARLIE RODRIGUEZ, ETC., ET AL.,
 
 Appellants.
 ____________________
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF PUERTO RICO
 
 [Hon. Juan M. Perez-Gimenez, U.S. District Judge]
 

 Before
 
 Selya, Circuit Judge,
 Campbell, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 Pablo Landrau Pirazzi, with whom Aldarondo & Lopez Bras,
Claudio Aliff Ortiz, were on brief for appellant Rodriguez and
Manuel J. Perez Garcia, was on brief, for appellant Misla and
Figueroa.
 Carlos Del Valle Cruz with whom Ricardo L. Torres Munoz was on
brief, for appellees. 

May 28, 1998

 
 Per Curiam. Defendants-appellants Edison Misla Aldarondo
("Misla"), President of the House of Representatives of Puerto
Rico; Jose Figueroa ("Figueroa"), Director of the Legislative
Service Office; and Charlie Rodriguez ("Rodriguez"), President of
the Senate, each of whom has been sued solely in his capacity as an
officeholder of the Commonwealth of Puerto Rico, appeal from an
order of the district court enforcing a $300,000 settlement
agreement between plaintiff-appellee Olga G. Negron Gaztambide
("Negron") and the Commonwealth. Because we find that the
attorneys who entered into the putative settlement agreement did
not have the actual authority to do so on behalf of the
Commonwealth, we vacate and remand. 
 I. 
 Background 
 In late January or early February 1993, Negron was
discharged from her position as a librarian in the Legislative
Library, which is managed by the Legislative Service Office of the
Commonwealth of Puerto Rico. She was informed of her discharge in
a letter signed by Nelida Jimenez Velazquez ("Jimenez"), then the
Director of the Legislative Service Office. At the time, Zaida
Hernandez Torres ("Hernandez") was the Speaker of the House of
Representatives, and Roberto Rexach Benitez ("Rexach") was the
President of the Senate. 
 On June 22, 1993, Negron brought this section 1983 action
alleging, inter alia, that Jimenez, Hernandez, and Rexach had
terminated her employment because of her political affiliation with
Puerto Rico's Popular Democratic Party in violation of the First
Amendment. Negron sued the three defendants in both their personaland official capacities, seeking monetary damages and
reinstatement. The district court dismissed Negron's claims on the
ground that the defendants were entitled to legislative immunity. 
We reversed, holding that the challenged actions were
administrative and thus not subject to an absolute immunity
defense. See Negron-Gaztambide v. Hernandez, 35 F.3d 25 (1st Cir.
1994). 
 After remand, the case was eventually scheduled for trial
on November 25, 1996. Pursuant to a defense and indemnification
statute commonly referred to as "Law 9," see P.R. Laws Ann. tit.32,
 3085, the Commonwealth's Department of Justice ("DOJ") provided
the defendants with legal representation. Attorney Antonio
Montalvo ("Montalvo") represented defendants Hernandez and Jimenez,
and counsel Miguel Pagan ("Pagan") represented Rexach. On the day
the trial was to commence, the attorneys held settlement
negotiations in the chambers of the district court. In order to
obtain Law 9 funds to indemnify the defendants for the costs of the
settlement, the attorneys made several calls to the DOJ during the
course of the negotiations. DOJ procedures require that
settlements be submitted to a Settlement Committee, which then
makes a recommendation regarding approval to the Commonwealth's
Attorney General ("AG"), prior to the allocation of Law 9 funds. 
By the conclusion of the negotiations, approval from the AG had not
yet been obtained. Nonetheless, the parties informed the district
court that an agreement had been reached and that they were in the
process of obtaining the required approval. 
 With the settlement conference concluded, the district
court questioned counsel on the record regarding the terms of the
oral agreement the parties had reached. Attorney Pagan began by
stating that "the agreement that the attorneys have reached is
pending approval by the Commonwealth of Puerto Rico Department of
Justice." Pagan then described the settlement, stating that the
defendants (without specifying whether in their official or
personal capacities) had agreed to provide monetary damages in the
amount of $300,000, that the district court record in this case
would be sealed, and that Negron would be reinstated to her job
with certain retirement benefits after the AG accepted the
settlement. As for the source of the funds, Pagan made the
following opaque statement:
 The Senate of Puerto Rico and its President,
 Roberto Rexach Benitez will pay by stipulation
 the amount of $150,000. The House of
 Representatives and defendant Zaida Hernandez
 Torres, now the Superior Judge of Puerto Rico,
 Honorable Nelida Jimenez will pay also the
 amount of $150,000. 

 The district court specifically asked both defense
attorneys, Pagan and Montalvo, whether they had authorization from
their clients to propose the settlement, and both replied
affirmatively. The district court then stated, "[B]oth counsel are
working under my orders to get the settlement committee to approve
this as soon as possible, at least to consider it as soon as
possible with your recommendations." 
 In January 1997, new leadership took power in the Puerto
Rico legislature. Rodriguez was sworn in as the new President of
the Senate; Misla, as Speaker of the House of Representatives; and
Figueroa, as Director of the Legislative Service Office. Pursuant
to Fed. R. Civ. P. 25(d)(1), Rodriguez, Misla and Figueroa were
automatically substituted as defendants in their official
capacities to the official capacity claims Negron had brought
against Hernandez, Jimenez and Rexach. At that point, therefore,
there were two sets of defendants: the official capacity defendants
(Rodriguez, Figueroa, and Misla) and the personal capacity
defendants (Hernandez, Jimenez and Rexach). 
 The change in legislative leadership may have prompted a
change in heart about the settlement. On March 13, 1997, the
district court required representatives from the DOJ to attend a
status conference on the settlement agreement. An attorney
representing the AG explained that monies to satisfy the settlement
would come from Law 9 funds, but took the position that the
defendants had not followed the proper procedure to obtain the
statutory funds. The attorney explained that a petition for the
funds had to go to the Settlement Committee at the DOJ first, and
then to the AG for his approval. The district court then granted
the AG until March 26, 1997, to decide if the settlement would go
forward as planned; otherwise, a jury trial would commence on May
12, 1997. 
 On March 25, 1997, the AG filed an informational
submission stating that Hernandez, still a defendant in her
personal capacity, had contacted the AG and claimed that she had
not been aware of the details of the settlement and would not
approve it until all the details were made known to her. The AG
informed the court that, as a result, he would not make a decision
concerning payment of the settlement from Law 9 funds until all
parties were in agreement, and until a proper settlement request
had been prepared and submitted to the DOJ.
 On March 31, 1997, plaintiff filed a motion requesting
the district court to enter judgment in accordance with the
stipulation entered by Attorneys Montalvo and Negron. The motion
requested (1) entry of judgment consistent with the November 25,
1996, settlement agreement; (2) additional back pay; (3) a default
judgment against Hernandez plus sanctions; (4) $25,000 in
attorney's fees; (5) a contempt order against appellants in their
official capacities; and (6) any other remedies that the court
deemed proper. The official capacity defendants opposed this
motion, arguing that the settlement was contingent upon AG
approval. 
 On June 16, 1997, the district court granted the
plaintiff's motion in part. The district court found that, as far
as the court was concerned, "a valid and enforceable settlement
agreement was reached on November 25[, 1996] and that there is no
issue as to the parties' consent." The court described how it
understood the oral agreement that had been reached between the
parties: 
 It is the Court's recollection that the only
 snag in the settlement negotiations was
 whether the sum agreed upon as damages would
 be paid out of the General Fund pursuant to
 Law 9 (for which the DOJ approval process was
 necessary) or by the Legislature. During the
 settlement discussions that took place on
 November 25, the Court stated to the parties
 that the source of the funds was not the
 Court's concern. Based on . . .
 representations made during these discussions,
 which included telephone calls made from the
 [district court's chambers] to the DOJ, the
 Court assumed that the settlement would be
 paid from the General Fund. . . . The Court's
 understanding . . . was not that the
 settlement was contingent on approval by the
 DOJ in the sense that the agreement would be
 off were the DOJ not to grant approval. 
 Rather, the court's understanding was that if
 the DOJ did not accept the settlement, the
 Legislature would assume the payment. 

The district court thus directed the Commonwealth's Attorney
General to "make a determination with respect to the settlement,"
and then ordered that if the AG declined to pay, the legislature
would fulfill the defendants' end of the settlement. The district
court granted plaintiff's motion for entry of judgment, but denied
the request to find defendants in contempt and for sanctions. The
Commonwealth now appeals this order. Two defendants in their
personal capacities (Rexach and Jimenez) have supported the
plaintiff's appeal with affidavits claiming that they had consented
to the settlement agreement.
 II. 
 Discussion
A. Preliminary Issues
 As always, we have a duty to question our jurisdiction to
hear this appeal. On September 10, 1997, the district court
entered judgment pursuant to its June 16, 1997 order, stating:
 The court having entered an order granting
 plaintiff's "Motion for Entry of Judgment,"
 judgment is hereby entered enforcing the
 settlement agreement reached by the parties
 and read in open court on November 25, 1996. 
The official capacity defendants, however, had already filed a
joint notice of appeal from the court's June 16, 1997 order on June
23, 1997, two and a half months earlier. Obviously, the notice of
appeal was premature as no judgment had yet been entered when the
notice of appeal was filed. This error need not detain us; a
"notice of appeal filed after the court announces a decision or
order but before the entry of judgment is treated as filed on the
date of and after the entry." Fed. R. App. 4(a)(2); see First Tier
Mortgage Co., v. Investors Mortgage Ins. Co., 498 U.S. 269, 274-75,
277 (1991) (interpreting Rule 4(a)(2)); Clausen v. Sea-3, Inc., 21
F.3d 1181, 1186-87 (1st Cir. 1994) (similar). The official
capacity defendants' premature notice of appeal relates forward to
the date of entry of the final judgment. 
 There is some question, however, regarding whether the
judgment below constitutes a "final decision" within the meaning of
29 U.S.C. 1291. "A final decision under 1291 is one that 'ends
the litigation on the merits and leaves nothing more for the court
to do but execute the judgment.'" State St. Bank & Trust Co. v.
Brockrim, Inc., 87 F.3d 1487, 1490 (1st Cir. 1996)(quoting Digital
Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994)). 
The district court's June 16, 1997 order, while deciding that the
settlement agreement was enforceable, left some subsidiary matters
undecided (e.g., additional back pay and attorneys fees), pending
a future conference with the court. From what we can tell, no
future conference is now contemplated by any party. We thus have
no reason to think that the order and concomitant judgment have
left any substantial matters in abeyance that require further
proceedings in the district court. See Wang Lab. v. Applied
Computer Sciences, Inc., 926 F.2d 92, 95-96 (1st Cir. 1991). 
 In addition, Negron claims that Rodriguez, Misla and
Figueroa do not have standing to challenge the settlement agreement
because they were not in office at the time and thus did not
participate in the negotiations. This claim is devoid of merit. 
When the official capacity defendants entered office, they were
substituted automatically as representatives of the Commonwealth,
which is the real party in interest in the official capacity suits.
As the current officeholders, their lack of participation in events
prior to their ascendency to office does not alter their
substantive rights. See Fed. R. Civ. P. 25(d)(1); Legault v.
Zambarano, 105 F.3d 24, 26 (1st Cir. 1997). Moreover, the personal
knowledge of both sets of officeholders is irrelevant in this case. 
We now turn to the agreement. 
B. The Settlement Agreement
 As described above, Law 9 authorizes the AG to indemnify
public officials when judgments are obtained against them in their
personal capacities. The district court did not order the payment
of Law 9 funds in the absence of the AG's approval, but rather
ordered the legislature to assume the obligation if approval was
not obtained. This contingency has come to pass. The question
thus reduces to whether the district court was correct in
concluding that the legislature, as an institution, is bound by the
settlement agreement allegedly entered into by attorneys Montalvo
and Pagan on November 25, 1996. 
 The parties have asserted that the contract law of the
Commonwealth of Puerto Rico governs this question. Although
disputes regarding settlement agreements are generally resolved
according to state contract law, see Data Gen. Corp. v. Grumman
Sys. Support Corp., 36 F.3d 1147, 1166 (1st Cir. 1994), the oral
agreement at issue here purported to settle a claim brought
pursuant to a federal statute on the eve of trial, based on a
stipulation placed on the record in federal court. In such
circumstances, federal interests are generally sufficient to make
federal law the guidepost by which a court should decide whether
the parties have entered into an enforceable settlement of that
claim. See Town of Newton v. Rumery, 480 U.S. 386, 392 (1986);
Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d 112, 115 (4th
Cir. 1983).
 We will accept, for the sake of argument, the district
court's factual findings: attorneys Pagan and Montalvo "represented
unequivocally . . . that they were authorized by their clients . .
. to enter into the settlement"; the attorneys indicated that they
had settled plaintiff's case for $300,000; and that the attorneys
informed the court that, if the AG did not pay, the legislature
would fulfill the terms of the settlement. The official capacity
defendants now assert that attorneys Pagan and Montalvo, who
represented the prior officeholders, despite their assertions to
the contrary, lacked the authority to bind the Commonwealth in the
manner contemplated by the district court's order. We agree.
 The district court's order only contemplates that the
settlement will be fulfilled by the Commonwealth (either via Law 9
or by the legislature) and not from the assets of the personal
capacity defendants; the judge did not distinguish in any way
between the personal capacity claims and the official capacity
claims. The stipulation reflecting the alleged agreement,
moreover, is silent as to whether the parties intended to settle
the personal capacity claims, the official capacity claims, or
both. Yet the Supreme Court has explained that there is a
fundamental distinction between such claims:
 Personal-capacity suits seek to impose
 personal liability upon a government official
 for actions he takes under color of state law. 
 Official-capacity suits, in contrast,
 "generally represent only another way of
 pleading an action against an entity of which
 an officer is an agent." . . . [A]n
 official-capacity suit is, in all respects
 other than name, to be treated as a suit
 against the entity. 

Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citations omitted).
Recognizing this distinction, we see two possible ways to
conceptualize the disputed agreement as binding on the legislature:
as an agreement to indemnify the personal capacity defendants or as
a settlement of the official capacity suits. And we suppose that
a settlement of a claim by the Commonwealth that would be
enforceable against the Commonwealth in federal court would require
a waiver, in some form, of the Commonwealth's Eleventh Amendment
immunity. 
 It turns out, however, that regardless of how we
conceptualize the agreement, this agreement cannot be enforced
against the Commonwealth or its legislative body. We think it
elementary that a party who seeks to enforce a settlement agreement
against a state in federal court must demonstrate that the agent of
the state who allegedly entered into the agreement had the power to
bind the sovereign. Cf. Hachikian v. F.D.I.C., 96 F.3d 502, 505
(1st Cir. 1996) (holding that a party seeking to enforce a
settlement agreement against the federal government must
demonstrate that the agent who purported to bind the government had
actual authority to do so); Moore v. Beaufort County, 936 F.3d 159,
163 (4th Cir. 1991) (enforcing settlement in light of a factual
finding that an attorney for an election board had actual authority
under state law to bind the board). In order to bind the
Commonwealth, the three public officials who were sued in their
personal and official capacities (Hernandez, Rexach, and Jimenez)
must have been vested with the requisite authority to do so when
the agreement was consummated. 
 Whether we conceive of the necessary authority as the
power to waive the Commonwealth's Eleventh Amendment immunity and
consent to suit in federal court, see Ford Motor Co. v. Department
of Treasury, 323 U.S. 459 (1945); Paul N. Howard Co. v. P.R.A.S.
A., 744 F.2d 880 (1st Cir. 1984), to enter into a binding
settlement that includes the reinstatement of an employee, seeMorgan v. South Bend Community School, Inc., 797 F.2d 471, 479 (7th
Cir. 1986), and/or to order the indemnification of public officials
sued in their personal capacities, we see no basis in the record or
in the laws of the Commonwealth, see P.R. Laws Ann. tit. 32, 
3075-3086 (establishing procedures for actions against the
Commonwealth), for the assertion that Hernandez, Rexach, and
Jimenez, acting through attorneys Montalvo and Pagan, were vested
with such legal authority. Enforcing this agreement would obviate
the explicit statutory scheme established by Law 9 to settle
personal capacity claims against public officials. In addition,
the plaintiff has failed to alert us to any statute or regulation
authorizing these particular public officials to waive the
Commonwealth's Eleventh Amendment immunity or to commit legislative
funds to settle litigation. As a result, the district court cannot
order the enforcement of the alleged agreement against the
legislature.
 Vacated and Remanded. No costs.